FRANCIS E. AND GLORIA BARNES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barnes v. Commissioner
Docket No. 7406-81.
United States Tax Court
T.C. Memo 1983-396; 1983 Tax Ct. Memo LEXIS 392; 46 T.C.M. (CCH) 686; T.C.M. (RIA) 83396; July 11, 1983. Steven E. Hillman, for the petitioners. Larry L. Nameroff, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies of $32,361 and $176 in petitioners' 1976 *393 and 1977 Federal income tax and imposed an addition to tax under section 6653(a) [1] of $1,618 for 1976. After concessions, [2] the issue for decision is whether petitioner is entitled to a claimed business bad debt deduction for 1976. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Francis E. Barnes (hereinafter petitioner) and Gloria Barnes, husband and wife, resided in Columbus, Ohio, when they filed their 1976 and 1977 Federal income tax returns with the Internal Revenue Service and when they filed their petition in this case. Petitioner was a medical doctor specializing in surgery. During 1973, petitioner developed a plan to build a medical office building on property owned by and adjacent to the Mt. Carmel Hospital in Columbus, Ohio. The project would entail leasing the property *394 owned by the hospital, the construction of the office building on such property, and the eventual donation of the building to the hospital upon the expiration of the lease which would coincide with the term of the mortgage on the building. Petitioner discussed his plans with Dr. Barry S. Hillman (hereinafter Hillman), a medical associate, and Lawrence Feitlinger (hereinafter Feitlinger), a realtor and contractor. They held meetings with representatives of the Mt. Carmel Hospital, who indicated that they were favorably disposed to the construction of a medical office building on hospital property. Petitioner, Hillman, and Feitlinger discussed formation of a partnership for purposes of conducting this venture. They had an attorney prepare a rough draft of a partnership agreement, but never finalized or signed any such agreement. To finance the start-up expenses of the construction project, Feitlinger suggested to petitioner and Hillman that some funds were needed, and petitioner, Hillman, and Feitlinger obtained a $250,000 loan from the American Bank of Central Ohio. Subsequently, on November 9, 1973, petitioner, Hillman, and Feitlinger executed a one-year cognovit promissory *395 note to the American Bank of Central Ohio for $250,000. The promissory note was secured by all of the stock of the Feitlinger Construction Company. At or about the same time, a checking account was opened at the American Bank of Central Ohio in the name of the Feitlinger Construction Company, and the proceeds of the loan ($250,000) were deposited into that account. Neither petitioner nor Hillman had an interest in the Feitlinger Construction Company or any signatory powers with respect to the aforementioned checking account. Indeed, as of November 9, 1973, they did not even know of the existence of the checking account or that the proceeds of the loan would be deposited in such account. [3]
After the loan was obtained, petitioner and Hillman played virtually no part in pursuing the proposed construction project. In June 1974, Hillman withdrew from the project. At or about the same time, petitioner's continued participation in the project also became doubtful when Feitlinger informed him that no physicians were to be involved in the project. Eventually, petitioner *396 also withdrew from the project. Sometime in early 1974, some construction began on the Mt. Carmel Hospital property, but ceased shortly thereafter. [4]
When the $250,000 promissory note became due, it was not paid and Feitlinger sought a renewal of the prior obligation. Before the American Bank of Central Ohio would grant any such renewal, it demanded the signatures of both petitioner and Hillman on a second promissory note. Neither petitioner nor Hillman were contacted by the bank, but instead were approached by Feitlinger concerning signing a second note. Although both petitioner and Hillman opposed signing another promissory note, Feitlinger convinced them to sign by promising that he would renegotiate the terms of the note and relieve them of their liability thereon within 30 to 60 days. Consequently, petitioner, Hillman, and Feitlinger renewed the prior obligation by executing a second one-year cognovit promissory note for $250,000. The second promissory *397 note was due on November 9, 1975, but was otherwise identical to the original promissory note. Petitioner, Hillman, and Feitlinger defaulted on the payments required under the second promissory note. On July 10, 1975, the American Bank of Central Ohio filed a complaint against petitioner and Hillman in the Court of Common Pleas of Franklin County, Ohio, requesting a judgment against them for default on the promissory note, and a cognovit judgment was rendered against them. They filed a motion for relief from judgment on July 21, 1975, and a hearing was held thereon on September 3, 1975. On January 20, 1976, the Court of Common Pleas rendered its decision overruling their motion for relief from judgment. Petitioner and Hillman appealed that decision to the Court of Appeals, Franklin County, Ohio, which affirmed the decision of the Court of Common Pleas. In February 1975, Feitlinger filed a petition with the Bankruptcy Court for relief under Chapter XI of the Bankruptcy Act. Subsequently, petitioner and Hillman filed complaints against Feitlinger in the Bankruptcy Division of the U.S. District Court for the Southern District of Ohio, objecting to the dischargeability of the debts *398 claimed in each such action. On December 23, 1976, the American Bank of Central Ohio and petitioner entered into a "Covenant Not to Enforce Judgment", whereby the bank agreed not to enforce its judgment against petitioner in exchange for a payment of $60,000. Petitioner paid the bank $60,000 on the same date. Petitioner also assigned to the American Bank of Central Ohio any interest that he had against Feitlinger pursuant to the complaint that he had filed in the Bankruptcy Division of the U.S. District Court for the Southern District of Ohio. On his 1976 income tax return, petitioner claimed a business bad deduction of $60,000. In the notice of deficiency, respondent determined that petitioner was entitled to a nonbusiness bad debt deduction which is only deductible as a short-term capital loss under section 166(d). OPINION We must determine whether petitioner is entitled to a business bad deduction in the amount of $60,000. Respondent maintains that petitioner is only entitled to a nonbusiness bad debt deduction for the $60,000 payment he made to the American Bank of Central Ohio. It is respondent's position that, under the facts of the instant case, petitioner *399 must be considered to have signed the promissory notes to the American Bank of Central Ohio as an accomodation maker or guarantor for the principal obligor, Feitlinger. [5] As such, respondent contends that petitioner has failed to prove that his guarantee of the loan to Feitlinger and the resulting bad debt loss was proximately related to his trade or business as is required under section 166(d). Furthermore, respondent asserts that petitioner cannot rely on section 166 (f) because he did not establish that the proceeds of the loan were used in Feitlinger's trade or business. Petitioner, on the other hand, argues that he was in the real estate development business, that the claimed bad debt was proximately related to such business, and therefore, he is entitled to a business bad debt deduction under section 166. [6] We hold for respondent. *400 Section 166(a) provides that a deduction shall be allowed for any debt which becomes wholly worthless during the taxable year. Section 166(d), however, provides that, in the case of a taxpayer other than a corporation, a loss attributable to the worthlessness of a nonbusiness bad debt shall be treated as a short-term capital loss. Pursuant to section 166(d)(2), a non-business debt is defined as follows: (2) Nonbusiness debt defined.--For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than-- (A) a debt created or acquired (as the the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. To be treated as a business debt, the debt must be proximately related to the taxpayer's trade or business. Sec. 1.166-5(b), Income Tax Regs.; Whipple v. Commissioner,373 U.S. 193 (1963). Whether a debt is a nonbusiness or business debt is a question of fact. Sec. 1.166-5(b), Income Tax Regs.
When a taxpayer pays the debt of a third party because of his prior guarantee of such debt, a new debt arises between the taxpayer and *401 the third party by reason of the law of subrogation. Putnam v. Commissioner,352 U.S. 82 (1956); Benak v. Commissioner, 77 T.C. (1981); Gillespie v. Commissioner,54 T.C. 1025 (1970), affd. per unpublished order (9th Cir. 1972). In this context, the characterization of the debt as a business or nonbusiness debt, that is, whether the debt is proximately related to the taxpayer's trade or business, is based upon the facts at the time when the guarantee was made. Gillespie v. Commissioner,supra.With respect to guarantees made before January 1, 1976, section 166(f) treats a guarantor's loss like a business bad debt, making if fully deductible from ordinary income, if the requirements of such sections are satisfied. Section 166(f) [7] required that (1) the guarantor may not be a corporation; (2) the debt may not be a corporate obligation; (3) the proceeds of the loan must be used in the trade or business of the borrower; and (4) the obligation of the borrower to the lender must be worthless at the time the guarantor satisfies his obligation to the lender. Section 166(d) is inapplicable to a bad debt loss falling within the *402 terms of section 166(f). Sec. 1.166-8(a)(2), Income Tax Regs. If the requirements of section 166(f), however, are not met, the deductibility of the loss must be determined in accordance with section 166(d). On the record before us, petitioner's guarantee of the loan from the American Bank of Central Ohio and the resulting bad debt loss must be treated as a nonbusiness bad debt under section 166(d). Respondent's determination is presumptively correct and petitioner bears the burden of proving otherwise. Welch v. Helvering,290 U.S. 111 (1933); *403 Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner has failed to carry his burden of proof. In the first instance, petitioner has not established that the four requirements of section 166(f) were satisfied. There is no evidence whatsoever in the record with respect to the use of the loan proceeds even though section 166(f) requires that the proceeds must be used in the trade or business of the borrower. In other words, as argued by respondent, petitioner had to prove that the proceeds of the loan from the American Bank of Central Ohio were used in Feitlinger's trade or business. [8] Nevertheless, petitioner made no effort to make this showing. Indeed, petitioner's own testimony indicates that he believed Feitlinger used the proceeds for personal purposes. Although the record indicates that some construction had actually begun on the Mt. Carmel Hospital property, the record does not indicate who was performing the construction or the owner of the interest for whom such construction was being performed. Furthermore, there is no evidence in the record as to whether petitioner, Hillman, Feitlinger, or any alleged partnership between them ever acquired an interest, *404 leasehold or otherwise, in the Mt. Carmel Hospital property. Thus, there is simply nothing in the record which shows that Feitlinger put the proceeds of the loan to the use to which petitioner had intended or that he in any way or to any extent used such proceeds in his trade or business. Since petitioner has failed to meet the requirements of section 166(f), we must decide whether he is entitled to a business or nonbusiness bad debt deduction under section 166(d). Once again, petitioner has utterly failed to establish the facts necessary to sustain his position. We cannot find that petitioner's guarantee of the loan to Feitlinger was proximately related to petitioner's trade or business. The record clearly shows that petitioner was a practicing surgeon during the years in issue. While he argued that he was also in the business of real estate development, the only support in the record for this assertion is his own self-serving testimony. Such testimony, however, was vague, sparse, and wholly inadequate. Although petitioner listed his investments, he provided little detail *405 as to the nature of those investments and the extent of his involvement with respect thereto. Accordingly, we cannot find that any of his investments rose to the status of a trade or business. Nevertheless, petitioner argues that he is a member of a partnership between himself, Hillman, and Feitlinger, that he acted in his capacity as a partner in guaranteeing the loan from the American Bank of Central Ohio, and that he was engaged in the trade or business of the partnership in so doing. Since petitioner has failed to prove that a partnership existed or, even if it did, that it was engaged in trade or business, we need not address the merits of his argument. [9]
Although petitioner, Hillman, and Feitlinger did discuss the formation of a partnership to conduct the proposed construction venture, the record shows that such discussions never reached fruition. They had a rough draft of a partnership agreement prepared, but failed to ever finalize or sign a partnership agreement. There is no indication *406 in the record that they held themselves out as partners. After obtaining the loan, petitioner and Hillman engaged in very little, if any, activity with respect to the proposed construction venture and it appears that Feitlinger was given the unfettered use of the proceeds of the loan. The record leaves little doubt that the proposed deal between these three men disintegrated quickly after the loan was obtained. In June 1974, Hillman withdrew from the venture, and soon thereafter petitioner's participation also ceased. Petitioner's testimony indicates that he believes Feitlinger was attempting to push Hillman and him out of the project in order to make a better deal for himself. Regardless, on these facts, we can only conclude that petitioner, Hillman, and Feitlinger never really reached any agreement on how they would conduct the proposed venture. Furthermore, even if we assume that a partnership did indeed exist, there is nothing in the record which establishes that the partnership ever engaged in a trade or business. All that the record shows is that petitioner, Hillman, and Feitlinger, engaged in some preliminary discussions with representatives of the Mt. Carmel Hospital, *407 formulated some plans regarding the construction of a medical office building on the hospital's property, and acquired a loan from the American Bank of Central Ohio. Beyond that, there is no indication that they engaged in any other activity. Consequently, their activities preceded the actual conduct of trade or business and, as such, represent mere plans for a trade or business that were never realized. See Hoopengarner v. Commissioner,80 T.C. 538 (1983); Todd v.Commissioner,77 T.C. 246 (1981), affd. per curiam 682 F.2d 207 (9th Cir. 1982). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue. ↩
2. Petitioners concede that they are liable for an addition to tax for negligence or intentional disregard of rules and regulations under sec. 6653(a) based upon the final determination of the deficiency for 1976.↩
3. It appears that none of the loan proceeds was used for the proposed construction project. [Entire record]↩
4. The record does not indicate either the identity of the contractor performing the construction or the identity of the owner of the interest (whether by lease or fee) for whom the construction was being performed.↩
5. Respondent maintains that both petitioner and Hillman were guarantors.↩
6. Petitioner has not disagreed with respondent characterizing him as a guarantor rather than a primary obligor on the obligation to American Bank of Central Ohio. Indeed, any argument to that effect would be of no avail to petitioner because as a primary obligor on the loan he would not be entitled to a bad debt deduction for the repayment of his↩ obligation to the bank. Instead, he would have to argue that he had turned around and loaned his share of the loan proceeds to Feitlinger or a partnership composed of himself, Hillman, and Feitlinger. Such an argument was never made nor is there anthing in the record to support such an argument. Thus, it appears that petitioner agrees that he merely guaranteed a loan to Feitlinger believing that he would use the proceeds to pursue the proposed construction venture. Consequently, we shall assume for the remainder of this opinion that petitioner was a guarantor of the loan.
7. Sec. 166(f) provided: (f) GUARANTOR OF CERTAIN NONCORPORATE OBLIGATIONS:--A payment by the taxpayer (other than a corporation) in discharge of part or all of his obligation as a guarantor, endorser, or indemnitor of a noncorporate obligation the proceeds of which were used in the trade or business of the borrower shall be treated as a debt becoming worthless within such taxable year for purposes of this section (except that subsection (d) shall not apply), but only if the obligation of the borrower to the person to whom such payment was made was worthless (without regard to such guaranty, endorsement, or indemnity) at the time of such payment.↩
8. Respondent has not argued that any of the other requirements of sec. 166(f) were not satisfied.↩
9. See Butler v. Commissioner,36 T.C. 1097↩ (1961); McKee, Nelson, and Whitmire, 1 Federal Taxation of Partnerships and Partners, sec. 13.02[1], p.13-8 (1977).