MALCOLM C. TODD AND RUTH S. TODD, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11212–79.     Filed August 10, 1981.

*Ernest W. Pitney,* for the petitioners.
*Karl D. Zufelt,* for the respondent.

WILES, *Judge:* Respondent determined a deficiency of
$24,238 in petitioners' 1972 income tax. The sole issue for
decision is whether an abandonment loss incurred by petition-
ers in 1975 was attributable to a trade or business within the
meaning of section 172(d)(4).[1]

### FINDINGS OF FACT

All of the facts have been stipulated and are found accord-
ingly.

Malcolm C. Todd (hereinafter petitioner) and Ruth S. Todd
resided in Long Beach, Calif., when they filed their 1972 joint
income tax return and when they filed their petition in this
case.

From prior to 1950 through 1975, petitioner was a practicing
physician and surgeon. In 1964, petitioner purchased a parcel
of land in Long Beach, Calif., for the purpose of constructing a
16-story rental apartment building. Prior to this venture,
petitioner had never been engaged in either the business of
developing real estate or the business of operating rental
properties.

---

[1]Unless otherwise indicated, statutory references are to the Internal Revenue Code of
1954 as amended.

Between 1964 and 1975, petitioner actively pursued the apartment building venture. During 1965 through 1967, petitioner hired a project manager, engineers, and an architect to develop plans for the building and to secure the approval of city planning officials, incurring the following expenses:

Salary of project manager and superintendent.. $53,000
Architectural fees,engineering, and plans ......... 104,350
Permits, licenses, recording, etc ........................ 2,434

Total ................................................... 159,784

Petitioner never claimed such expenses as deductions for any year prior to 1975.

In 1967, petitioner postponed the apartment building project because of high interest rates. In addition, problems created by the California Coastal Commission presented further obstacles to proceeding with the project. In 1975, the city of Long Beach took action to rezone the property which petitioner had purchased, from R–5, a classification which would have permitted construction of the apartment building, to R–2, a classification which would not permit such a building. Finally, in 1975, petitioner abandoned his plans to construct the apartment building. Prior to that time, petitioner had not engaged in any construction activity with respect to the project or even begun preparing the site therefor.

On his 1975 return, petitioner claimed an abandonment loss of $159,783.91, attributable to his abandonment of the planned construction of the apartment building. On September 12, 1976, petitioner filed an application for tentative refund, claiming a net operating loss carryback from 1975 to 1972 of $90,940. Petitioner's application for a tentative refund was allowed, and $24,238 plus interest was refunded to him. In the notice of deficiency, respondent determined that petitioner did not sustain a net operating loss in 1975 within the meaning of section 172 because the claimed abandonment loss was not attributable to a trade or business.[2] Accordingly, respondent disallowed the net operating loss carryback to 1972.

---

[2]The respondent has not challenged the deductibility of the 1975 abandonment loss under sec. 165(c)(2) as a loss incurred in a transaction entered into for profit.

OPINION

We must decide whether the abandonment loss which petitioner incurred in 1975 was attributable to a trade or business for purposes of calculating his net operating loss under section 172(d)(4).

Section 172 allows a taxpayer to carry back and carry over net operating losses, thereby permitting the deduction of a net operating loss incurred in one taxable year from the income derived in other taxable years. Pursuant to section 172(c), the term "net operating loss" is defined as "the excess of the deductions allowed by this chapter over the gross income," with certain exceptions set forth in section 172(d). Specifically, section 172(d)(4) provides, in pertinent part, as follows:

(4) NONBUSINESS DEDUCTIONS OF TAXPAYERS OTHER THAN CORPORATIONS.— In the case of a taxpayer other than a corporation, the deductions allowable by this chapter which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business. For purposes of the preceding sentence—
(A) any gain or loss from the sale or other disposition of—
(i) property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or
(ii) real property used in the trade or business,
shall be treated as attributable to the trade or business;

Thus, nonbusiness deductions in excess of the taxpayer's nonbusiness income are excluded from the computation of the net operating loss. See sec. 1.172–3(a)(3), Income Tax Regs. Where a taxpayer engages in more than one trade or business, the income and deductions from all such businesses are aggregated to calculate the amount, if any, of the net operating loss. *Martin v. Commissioner*, 56 T.C. 1294, 1298 (1971).

Petitioner contends that the abandonment loss was attributable to a trade or business, and therefore, he is entitled to the claimed loss carryback. According to petitioner, he had entered the business of renting apartments through his activities with respect to the planned construction of the apartment building. Petitioner insists that the loss he incurred upon the abandonment of his plans to construct the apartment building was attributable to that business. Consequently, he asserts that the abandonment loss must be aggregated with his

other business income and deductions for the purpose of calculating the amount of his net operating loss for 1975.

Respondent, on the other hand, maintains that petitioner's abandonment loss was not attributable to a trade or business. While respondent has not challenged the deductibility of the abandonment loss under section 165(c)(2) as a loss incurred in a transaction entered into for profit, he insists that the loss may not be considered a business loss for purposes of section 172(d)(4) because petitioner never actually commenced any trade or business with respect to the planned construction of the apartment building. It is respondent's position that petitioner's activities and expenditures with respect to the project were directed towards commencing an apartment rental business, but that such a trade or business never existed because petitioner failed to begin actual business operations.

We hold that petitioner's abandonment loss was not attributable to a trade or business for purposes of section 172(d)(4). On numerous occasions, this Court has denied taxpayers a current deduction under section 162(a) and its predecessors for start-up or preopening expenses incurred before the beginning of business operations, holding that the taxpayer was not engaged in a trade or business prior to the time actual business operations commenced. *Goodwin v. Commissioner*, 75 T.C. 424 (1980); *Madison Gas & Electric Co. v. Commissioner*, 72 T.C. 521, 566–567 (1979), affd. 633 F.2d 512 (7th Cir. 1980); *Radio Station WBIR, Inc. v. Commissioner*, 31 T.C. 803, 810–812 (1959); *Polachek v. Commissioner*, 22 T.C. 858, 863 (1954). See also *Richmond Television Corp. v. United States*, 345 F.2d 901 (4th Cir. 1965), vacated and remanded on other issues 382 U.S. 68 (1965).

In *Polachek*, a taxpayer had spent considerable time and money attempting to establish an investment advisory service which was never formally organized or actually operated. This Court held that the taxpayer was not engaged in any business by means of his efforts to establish the investment advisory service. According to the Court, "he merely had plans for a potential business" which never materialized. *Polachek v. Commissioner, supra* at 863. More recently, in *Goodwin*, we held that two partnerships were not engaged in a trade or business during 1972 with respect to the construction of certain housing projects because those projects were not

completed or occupied by tenants until sometime after that year. We believe that our holdings in *Polachek* and *Goodwin* are applicable to the present case.

It is clear that petitioner was not in the business of developing real estate or operating rental properties prior to his involvement in the apartment building venture. Nevertheless, petitioner argues that his active pursuit of the construction of the apartment building placed him in the business of renting apartments.[3] While petitioner took steps directed toward the establishment of a trade or business, no such business was ever established. Prior to the abandonment of his plans in 1975, petitioner had not even begun construction of the apartment building. Although the rental of a single piece of residential property may constitute a trade or business (*Lagreide v. Commissioner*, 23 T.C. 508 (1954)), the venture herein under consideration did not progress beyond the planning stage, and petitioner never rented a single apartment. His plans to enter the business of renting apartments were never realized. Accordingly, we are convinced that *Polachek* and *Goodwin* require us to hold that petitioner was not engaged in a trade or business with respect to the planned construction of the apartment building, and therefore, the loss incurred as a result of the abandonment of those plans was not attributable to a trade or business.[4]

Moreover, we believe that the policy underlying the enactment of the net operating loss provisions supports the conclusion that this venture did not constitute a trade or business for purposes of section 172(d)(4). Congress enacted the net operating loss provisions so that the Internal Revenue Code would not require a business with alternating profits and losses "to pay higher taxes over a period of years than a business with

---

[3]Petitioner has not argued that he was in the business of developing real estate, nor would the record support such a contention.

[4]On brief, petitioner relied on *379 Madison Avenue, Inc. v. Commissioner*, 60 F.2d 68 (2d Cir. 1932), revg. 23 B.T.A. 29 (1931). We have considered this case and found the facts therein to be readily distinguishable from those in the instant case. In *379 Madison Avenue, Inc.*, the Second Circuit held that the taxpayer was entitled under sec. 204 of the Revenue Act of 1921, ch. 136, 42 Stat. 231, to carry over a net operating loss arising in part from the deduction in 1922 of certain expenditures relating to an office building which was under construction during that year. In contrast to the instant case, not only had taxpayer there begun construction, but it had employed real estate brokers, leased space to prospective tenants, and collected nearly $50,000 in advance rents.

stable profits, although the average income of the two firms is equal." H. Rept. 855, 76th Cong., 1st Sess. (1939), 1939–2 C.B. 504, 510. By means of the net operating loss provisions, a business is allowed "to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year." *Libson Shops, Inc. v. Koehler*, 353 U.S. 382, 386 (1957). To implement these goals, section 172 sets forth specific rules for calculating the net operating loss. Among these rules is section 172(d)(4), which, through limiting a noncorporate taxpayer's use of nonbusiness deductions, seeks to restrict the benefits of the net operating loss deduction to losses attributable to the taxpayer's trade or business.

In the instant case, petitioner's plans to construct the apartment building did not even advance to the point where the venture could offer the potential to produce profits or losses from apartment rentals. In fact, the venture did not simply fail to produce income, but petitioner never constructed a single apartment which could have been rented to tenants. While petitioner may have invested funds in the project planning to embark upon a new trade or business, he abandoned such plans before anything even resembling a business could begin. At the time petitioner abandoned this venture, the loss he suffered could not be considered anything other than the product of an investment that went awry. Under these circumstances, we do not believe that the policy underlying the net operating loss provisions supports treating this loss as attributable to a trade or business for purposes of section 172(d)(4).

We have considered petitioner's other arguments and find them unpersuasive.

To reflect the foregoing,

*Decision will be entered for the respondent.*