HENRY ERFURTH AND EVELYN ERFURTH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15798–79.     Filed September 14, 1981.

*James F. Campion,* for the petitioners.
*Judith M. Picken,* for the respondent.

### OPINION

EKMAN, *Judge*: Respondent determined a deficiency in petitioners' Federal income tax for 1971 in the amount of $10,865.59. The sole issue for decision is whether petitioners may utilize nonbusiness capital losses in excess of nonbusiness capital gains to offset business capital gains in computing their net operating loss.

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts with exhibits attached is incorporated herein by this reference. The facts pertinent to the resolution of the issue presented are as follows.

Petitioners, husband and wife, who timely filed their Federal joint income tax returns for 1971 and 1974 with the Internal Revenue Service Center in Kansas City, Mo., resided at Westchester, Ill., at the time of filing their petition herein.

During 1974, petitioner Henry Erfurth was engaged in business as a real estate broker in partnership with his brother and received long-term capital gains from the partnership in the amount of $55,056.85. Also during 1974 he had nonbusiness capital gains in the amount of $43,515.41 from securities investments and nonbusiness capital losses from such investments totaling $76,875.95. In computing their net

operating loss for 1974, petitioners applied the excess of nonbusiness capital losses over nonbusiness capital gains ($76,875.95 - $43,515.41 = $33,360.54) to reduce their business capital gains. Petitioners' net operating loss for 1974 was carried back to 1971 and a tentative refund was applied as a credit against a subsequent year's liability.

Respondent has determined that in computing their net operating loss, petitioners are not entitled to reduce business capital gains by the excess of nonbusiness capital losses over nonbusiness capital gains.

The issue presented herein appears to be one of first impression and requires analysis of section 172, which provides for the net operating loss deduction, defines net operating loss, and delineates the method of computing the net operating loss and the carrybacks and carryovers of such loss. Section 172 provides in part:

(c) NET OPERATING LOSS DEFINED.—For purposes of this section, the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income. Such excess shall be computed with the modifications specified in subsection (d).

(d) MODIFICATIONS.—The modifications referred to in this section are as follows:

(1) NET OPERATING LOSS DEDUCTION.—No net operating loss deduction shall be allowed.

(2) CAPITAL GAINS AND LOSSES OF TAXPAYERS OTHER THAN CORPORATIONS. —In the case of a taxpayer other than a corporation—

(A) the amount deductible on account of losses from sales or exchanges of capital assets shall not exceed the amount includible on account of gains from sales or exchanges of capital assets; and

(B) the deduction for long-term capital gains provided by section 1202 shall not be allowed.

(3) DEDUCTION FOR PERSONAL EXEMPTIONS.—No deduction shall be allowed under section 151 (relating to personal exemptions). No deduction in lieu of any such deduction shall be allowed.

(4) NONBUSINESS DEDUCTIONS OF TAXPAYERS OTHER THAN CORPORATIONS. —In the case of a taxpayer other than a corporation, the deductions allowable by this chapter which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business. For purposes of the preceding sentence—

(A) any gain or loss from the sale or other disposition of—

(i) property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or

(ii) real property used in the trade or business,

shall be treated as attributable to the trade or business;

(B) the modifications specified in paragraphs (1), (2)(B), and (3) shall be taken into account;

Respondent supports his determination by reference to section 1.172–3(a)(2)(ii), Income Tax Regs., which provides:

(ii) The amount deductible on account of nonbusiness capital losses shall not exceed the amount includible on account of nonbusiness capital gains.

Petitioners' method of computing their net operating loss is clearly in contravention of section 1.172–3(a)(2)(ii), Income Tax Regs., a fact which petitioners do not dispute. They assert, however, that their method of computing the net operating loss is in accord with the statute. Moreover, they contend that section 1.172–3(a)(2)(ii), Income Tax Regs., restricts the net operating loss deductions for individuals in a manner not within the language of the Code and, consequently, that that regulation is invalid.

Specifically, petitioners contend that in enacting section 172 Congress supplied a detailed formula for computing the net operating loss provision and that formula does not encompass the restriction contained in section 1.172–3(a)(2)(ii), Income Tax Regs. Petitioners argue that, for purposes of the net operating loss computation, the sole limitation on the utilization of capital losses by an individual is provided in section 172(d)(2)(A). That section limits the deduction for capital losses to the amount of capital gains without mention of their business or nonbusiness character. According to petitioners, the limitation concerning nonbusiness deductions contained in section 172(d)(4) is wholly inapplicable in the instant case inasmuch as nonbusiness capital losses in excess of nonbusiness capital gains were used to offset business capital gains and not as a "deduction." We find this argument unconvincing. Section 172(d)(2)(A) clearly states that "the amount *deductible* on account of losses from sales or exchanges of capital assets shall not exceed the amount includible on account of gains from sales or exchanges of capital assets." (Emphasis added.) It is clear that capital losses are a "deduction" for purposes of section 172 and the clarity of the language quoted may not be avoided by petitioners through resort to semantic obfuscation.

We therefore believe that section 172(d)(2)(A) must be read in the light of section 172(d)(4) to support respondent's

position. A review of the history of section 172(d) provides some perspective concerning the promulgation of section 1.172–3(a)(2)(ii), Income Tax Regs., and its validity.

Section 122, I.R.C. 1939, predecessor to section 172, provided in pertinent part as follows:

SEC. 122. (a) DEFINITION OF NET OPERATING LOSS.— As used in this section, the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income, with the exceptions and limitations provided in subsection (d).

\*        \*        \*        \*        \*        \*        \*

(d) EXCEPTIONS AND LIMITATIONS.—The exceptions and limitations referred to in subsections (a), (b), and (c) shall be as follows:

(1) The deduction for depletion shall not exceed the amount which would be allowable if computed without reference to discovery value or to percentage depletion under section 114 (b)(2), (3), or (4);

(2) There shall be included in computing gross income the amount of interest received which is wholly exempt from the taxes imposed by this chapter, decreased by the amount of interest paid or accrued which is not allowed as a deduction by section 23(b), relating to interest on indebtedness incurred or continued to purchase or carry certain tax-exempt obligations;

(3) No net operating loss deduction shall be allowed;

(4) Long-term capital gains and long-term capital losses shall be taken into account without regard to the provisions of section 117(b). *As so computed the amount deductible on account of long-term capital losses shall not exceed the amount includible on account of the long-term capital gains, and the amount deductible on account of short-term capital losses shall not exceed the amount includible on account of the short-term capital gains;*

(5) *Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions and limitations specified in paragraphs (1) to (4) of this subsection.*

[Emphasis added.]

Under section 122(d)(5), I.R.C. 1939, it was clearly provided that section 122(d)(4), I.R.C. 1939, was to be applied in computing the limitation prescribed by section 122(d)(5), I.R.C. 1939. In contrast, section 172(d)(2)(A) of the present statute is omitted from the applicable limitation prescribed by section 172(d)(4).

Section 39.122–3(a)(4)(iii), Regs. 118 (1953), predecessor of present section 1.172–3(a)(2)(ii), Income Tax Regs., was promul-

gated September 26, 1953, as the Secretary's interpretation of section 122(d), I.R.C. 1939, and read as follows:

The amount deductible on account of nonbusiness capital losses shall not exceed the amount includible on account of nonbusiness capital gains.

When section 1.172–3(a)(2)(ii), Income Tax Regs., was promulgated, it utilized the identical language contained in section 39.122–3(a)(4)(iii), Regs. 118 (1953). Petitioners contend that respondent's regulation fails to reflect what petitioners see as an affirmative change in congressional policy, and is therefore invalid. We do not agree.

Pursuant to section 7805(a), the Commissioner is vested with broad authority to promulgate all needful regulations. It is well settled that as "'contemporaneous constructions by those charged with administration of' the Code, the Regulations 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes,' and 'should not be overruled except for weighty reasons.'" *Bingler v. Johnson*, 394 U.S. 741, 750 (1969).

It is equally clear, however, that where the provisions of a statute are unambiguous and its directive specific, respondent has no power to amend it by regulations. *Koshland v. Helvering*, 298 U.S. 441, 447 (1936). A regulation which is in conflict with or restrictive of a statute is pro tanto invalid. *Citizen's National Bank of Waco v. United States*, 417 F.2d 675 (5th Cir. 1969).

The drafters of section 172, in rewriting section 122, I.R.C. 1939, sought both to clarify the net operating loss provision and to effect several major substantive changes. H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. A56 (1954). Concerning the method of computing the amount of the net operating loss, the committee report states in pertinent part:

*Under present law, certain adjustments are made in arriving at the amount determined to be the net operating loss. Thus, adjustments are made for* any tax-exempt interest received by the taxpayer, the excess of percentage or discovery depletion over cost depletion, *the excess of nontrade or nonbusiness deductions of taxpayers other than corporations over gross income from such sources*, the excess of capital losses of taxpayers other than corporations over capital gains, and the deduction with respect to long-term capital gains for taxpayers other than corporations. In effect, all these adjustments [serve] to reduce the amount of the loss which may be carried to another year. Furthermore, in determining the net operating loss for any year, such

determination is made without regard to net operating losses of other years. *Under the revised provisions, all the present adjustments have been retained with the exception of the one for tax-exempt interest.* The receipt of tax-exempt interest thus will no longer serve to reduce a net operating loss. [H. Rept. 1337, *supra* at A56. Emphasis added.]

See also S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 211–212 (1954). Thus, it is clear that the enactment of section 172 was not intended to effect a modification of the general limitation of nonbusiness deductions to the amount of nonbusiness income.

However, the drafters of section 172 were concerned with one aspect of that limitation and the committee reports state:

A further substantive change will permit taxpayers other than corporations who sell a business or certain business assets in effect to include any loss sustained on the sale of such business or business assets as part of a net operating loss for the year of the sale. (Corporations are entitled to this treatment under present law and under this section.) Thus, subsection (d)(4)(A) will overrule the decision in *Joseph Sic v. Commissioner* (10 T.C. 1096, 177 F.(2d) 649 (CA–8), certiorari denied, 339 U.S. 913), and similar cases, which held, for example, that a farmer who sold his farm at a loss could not include such loss as part of his net operating loss. The cases indicated that such loss was a nonbusiness loss since the taxpayer was not in the business of selling farms. The new provisions will reach the opposite result. [H. Rept. 1337, *supra* at A56-A57, S. Rept. 1622, *supra* at 212–213.]

After giving careful consideration to the legislative history, we find that the omission of section 172(d)(2)(A) from the modifications enumerated in section 172(d)(4)(B) does not affect the limitation of the utilization of nonbusiness capital losses to the extent of nonbusiness capital gains. To hold otherwise would require a belief that Congress, by the omission of section 172(d)(2)(A) from the required modifications, affirmatively excluded capital gains and losses from the general limitation of section 172(d)(4). Such action would be inconsistent with the enactment of section 172(d)(4)(A) specifically to overrule the *Joseph Sic* case and similar cases.

As we recently said in *Todd v. Commissioner,* 77 T.C. 246, 251 (1981):

Congress enacted the net operating loss provisions so that the Internal Revenue Code would not require a business with alternating profits and losses "to pay higher taxes over a period of years than a business with stable profits, although the average income of the two firms is equal." H. Rept. 855, 76th Cong., 1st Sess. (1939), 1939–2 C.B. 504, 510. By means of the net operating loss provisions, a business is allowed "to set off its lean years

against its lush years, and to strike something like an average taxable income computed over a period longer than one year." *Libson Shops, Inc. v. Koehler*, 353 U.S. 382, 386 (1957). To implement these goals, section 172 sets forth specific rules for calculating the net operating loss. Among these rules is section 172(d)(4), which through limiting a noncorporate taxpayer's use of nonbusiness deductions seeks to restrict the benefits of the net operating loss deduction to losses attributable to the taxpayer's trade or business.

In view of the foregoing, we conclude that section 1.172–3(a)(2)(ii), Income Tax Regs., is a reasonable interpretation of congressional intent and is consistent with the statute. Moreover, we note that the language of that regulation has remained unchanged from section 39.122–3(a)(4)(iii), Regs. 118, under the 1939 Code. When Congress enacted section 172 as part of the 1954 Code and again when it amended section 172(d) in 1976 by the addition of subsection 8, its failure to disapprove of the respondent's regulation must be read, under established principles of statutory construction, as congressional approval of respondent's interpretation of the amended or re-enacted statutes. *Helvering v. Winmill*, 305 U.S. 79, 82–83 (1938).

Finally, we believe that our holding is mandated by the language of the Supreme Court in *Fulman v. United States*, 434 U.S. 528, 538 (1978):

At the least, it is not unreasonable for the Commissioner to have assumed that Congress intended to carry forward the law existing prior to the 1954 Code * * * . As we said in *United States v. Ryder*, 110 U.S. 729, 740 (1884): "It will not be inferred that the legislature, in revising and consolidating the laws, intended to change their policy, unless such intention be clearly expressed." Accord, *Aberdeen & Rockfish R. Co. v. SCRAP*, 422 U.S. 289, 309 n. 12 (1975); *Muniz v. Hoffman*, 422 U.S. 454, 467–472 (1975); *Fourco Glass Co. v. Transmirra Corp.*, 353 U.S. 222, 227 (1957). If we will not read legislation to abandon previously prevailing law when, as here, a recodification of law is incomplete or departs substantially and without explanation from prior law, we cannot conclude that the Commissioner may not adopt a similar rationale in drafting his rule. In any case, given the law under the 1939 Code and the ambiguity surrounding the House and Senate Reports * * * , it is impossible to identify in this case any "weighty reasons" that would justify setting aside the Treasury Regulation. [Fn. ref. omitted.]

*Decision will be entered for the respondent.*