W. RYAN HOVIS AND JEAN H. HOVIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hovis v. Commissioner
Docket No. 12459-93
United States Tax Court
T.C. Memo 1995-60; 1995 Tax Ct. Memo LEXIS 61; 69 T.C.M. (CCH) 1845; T.C.M. (RIA) 95060; February 6, 1995, Filed *61 Decision will be entered for respondent. P was one of nine persons (the Organizers) who attempted to organize a national bank. Before the bank could begin business operations or issue any stock, the Organizers were required to receive subscriptions for 500,000 of its shares before Aug. 1, 1988. These subscriptions were never received, and the bank never opened for business. The costs that were incurred in the organization process were paid by the Organizers through third-party financing for which each of the Organizers was jointly and severally liable. In 1989, one of the Organizers filed for bankruptcy and was discharged from any liability for the financing. On Sept. 14, 1989, two of the other Organizers paid back the financing. These two Organizers then formed a partnership to collect the funds that should have been paid by six of the Organizers, including P. These six Organizers jointly and severally executed a note payable to the partnership in the amount of the financing paid by the two Organizers. P made payments on this note in 1990 and 1991, and satisfied one-sixth of this note in 1991. Held: P may not deduct a $ 58,516 net operating loss in 1989, under sec. 172(a), *62 I.R.C., that he purportedly incurred in 1988 with respect to the discontinued organization of the bank. Held, further, P may not deduct any loss in 1989, on account of the discharge in bankruptcy of one of the Organizers. W. Ryan Hovis, pro se. For respondent: Lawrence B. Austin. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: W. Ryan Hovis and Jean H. Hovis petitioned the Court to redetermine respondent's determination of a $ 18,860 deficiency in their 1989 Federal income tax and a $ 3,307.75 addition thereto under section 6651(a)(1). Section references are to the Internal Revenue Code in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. References to petitioner are to W. Ryan Hovis; Jean H. Hovis is involved in this proceeding only by reason of a joint return. Following concessions, [1] we must decide: 1. Whether petitioners may deduct a $ 58,516 net operating loss (NOL) in 1989 that they purportedly incurred in 1988. We hold that they may not. *63 2. Whether petitioners may deduct a loss of $ 29,166 in 1989 on account of the bankruptcy and discharge from liability of one of nine jointly and severally liable co-obligors (one of which was petitioner). We hold that they may not. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and attached exhibits are incorporated herein by this reference. When they petitioned the Court, petitioners resided in Rock Hill, South Carolina. They used the cash receipts and disbursements method to report income and expenses for 1989. They filed a 1989 Form 1040, U.S. Individual Income Tax Return, on April 15, 1991, using the status of "Married filing joint return". Petitioner is an attorney. In 1986, he and eight other persons (hereinafter, these nine people are collectively referred to as the Organizers) agreed to organize a national bank (Bank). On May 14, 1987, the office of the Comptroller of Currency (Comptroller) approved the Organizers' application for a charter for Bank, subject to their receiving subscriptions for 500,000 shares of Bank common stock on or before November 2, 1987. Bank could not begin business or issue any shares of stock *64 until the Organizers received subscriptions for all 500,000 shares. Bank could also not accept deposits or lend money. The Organizers were unable to secure subscriptions for all 500,000 shares of stock by the stated date, and the Comptroller extended the subscription period to July 31, 1988. The Organizers failed to obtain the required subscriptions by the extended date, and the Organizers abandoned their plan to organize Bank. Bank never received a charter, and it never opened for business. The costs incurred in the organization process were paid by the Organizers through debt (Debt) incurred on lines of credit with certain banks. [2] Each of the Organizers was jointly and severally liable for all of the Debt. As of July 31, 1988, the Organizers had incurred a Debt of $ 1.1 million. The Organizers made payments on the Debt from August 1988 through November 1989. In 1989 and 1990, three of the Organizers, *65 none of whom was petitioner, each filed for bankruptcy in the U.S. Bankruptcy Court for the District of South Carolina, and these three persons were released from any liability for the Debt (hereinafter, the six Organizers who remained liable on the Debt are referred to as the Remaining Organizers). [3] On September 14, 1989, two of the Remaining Organizers, neither of whom was petitioner, each paid $ 350,000 in complete discharge of the Debt (hereinafter, these two persons are referred to as the Paying Organizers). [4]
On December 5, 1989, the Paying Organizers formed the Young-Flint Partnership (Partnership) for *66 the sole purpose of collecting from the Remaining Organizers (including the Paying Organizers) the $ 700,000 that the Paying Organizers had paid on the Debt. On the same day, the Remaining Organizers, jointly and severally, executed a $ 700,000 promissory note (the Note) payable to Partnership. The Note bore interest at the rate of 11.5 percent per annum, and was payable in 240 monthly installments of $ 7,800, beginning on December 1, 1989, and ending on November 1, 2009. Each of the Remaining Organizers was obligated to pay $ 1,300 to Partnership on the first day of every month. During 1990 and 1991, petitioners made monthly payments to Partnership totaling $ 16,200 and $ 3,900, respectively. On April 17, 1991, petitioners paid Partnership $ 115,927.20, which satisfied petitioner's one-sixth portion of the Note. Petitioners claimed a deduction on their 1989 Form 1040 for the carryover of a $ 58,516 NOL sustained in 1988. [5] The NOL was primarily generated by a $ 137,786 ordinary loss that petitioners reported in their 1988 Federal income tax return, with respect to Bank. *67 OPINION Respondent determined that petitioners erroneously claimed a $ 58,516 NOL deduction in 1989, because the loss that they sustained in 1988 (and carried forward to 1989) was not attributable to a trade or business. Petitioners bear the burden of proving respondent's determination incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners primarily argue in their brief that the NOL is deductible in 1989, under section 172(a), because it arose from petitioner's trade or business. Section 172(a) grants a deduction for an NOL; i.e., the amount by which the taxpayer's deductions attributable to his or her trade or business exceed the income derived therefrom. See also sec. 172(c) and (d)(4). The amount of an NOL deduction equals the sum of the NOL carryovers to a given year plus the NOL carrybacks to that year. Sec. 172(a). Petitioners alternatively argue in their brief that they may deduct a $ 29,166 loss in 1989, under section 165(c)(2), on account of two of the Organizers filing for bankruptcy in that year. Section 165(c)(2) allows a deduction for loss that is not compensated for by insurance or otherwise and that *68 is sustained by an individual during the taxable year in any transaction that is entered into for profit and that is not connected with a trade or business. We disagree with petitioners' main argument that their loss is an NOL that arose in a trade or business. Petitioners bear the burden of proving their right to deduct an NOL in 1989. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955). A deduction for an NOL is allowable to petitioners as a matter of legislative grace; it is not a matter of right. Id. at 235; Deputy v. DuPont, 308 U.S. 488, 493 (1940). Whether a taxpayer's activities amount to the carrying on of a trade or business is a factual determination that must be made on a case-by-case basis. Higgins v. Commissioner, 312 U.S. 212, 217 (1941). Based on our careful review of the facts at hand, we are not convinced that petitioner's participation in the organization of Bank amounted to a trade or business. Among other things, petitioners have not established that petitioner was experienced in the organization of banking *69 institutions, or that he was in the trade or business of acting as an independent promoter. Indeed, petitioner admitted at trial that he had not previously been engaged in the trade or business of establishing banks. Our conclusion is further strengthened by the fact that the Organizers never received a charter to operate Bank and, absent such a charter, Bank could not commence its business operations. As the Court has consistently held, a taxpayer is not engaged in a trade or business prior to the time he or she commences actual business operations. See, e.g., Todd v. Commissioner, 77 T.C. 246 (1981) (loss sustained on the abandonment of a real estate venture was not attributable to a trade or business where the taxpayer neither commenced operations nor was previously involved in similar ventures), and the cases cited therein at 249-250, affd. per curiam 682 F.2d 207 (9th Cir. 1982). Petitioners argue that petitioner's involvement in Bank amounted to his trade or business because he actively participated in the organization of Bank and vigorously solicited subscriptions for its stock. Petitioners also argue that petitioner's *70 participation in Bank was directly involved with his trade of practicing law as an attorney and is subsumed within it. The record does not adequately support petitioners' allegations concerning active participation and solicitation. [6] Furthermore, we believe that such efforts, even if adequately supported, would merely exemplify the efforts of a careful investor who wants to safeguard his or her investment and minimize the possibility that the investment will go sour. Based solely on these efforts, we are unable to conclude that petitioner was involved in a trade or business with respect to his participation in Bank's organization. Moreover, we are unable to conclude that the "practice of law" has the broad meaning advocated by petitioners. The mere fact that petitioner was an attorney does not bring every venture in which he participates into his practice of law. In this regard, petitioners have not established a sufficient nexus between petitioner's participation in Bank's organization and his practice of law to convince us that the two activities were interdependent. *71 Accordingly, we hold that any loss that petitioners suffered in connection with the organization of Bank was not suffered in the course of petitioner's trade or business. See Seed v. Commissioner, 52 T.C. 880 (1969); see also Price v. Commissioner, T.C. Memo. 1971-323 (expenses incurred in organizing a bank were not deductible as business expenses, but were allowable as a loss from a transaction entered into for profit in the year in which the project was abandoned). To the extent that he cannot utilize the full amount of any such loss in 1988, he may not carry over the unused portion to the year in issue. As the Court has previously observed, nonbusiness losses may not be carried forward and deducted under section 172(a). See Johnsen v. Commissioner, 83 T.C. 103, 115-116 (1984), revd. on other grounds 794 F.2d 1157 (6th Cir. 1986); Erfurth v. Commissioner, 77 T.C. 570 (1981); Todd v. Commissioner, supra at 248-251. Turning to the second issue, petitioners argue in their brief that their share *72 of the Debt increased in 1989 when two of the Organizers filed for bankruptcy. [7] According to petitioners, each of the Organizers was initially liable for one-ninth of the Debt, and this percentage increased on account of the bankruptcy filings in 1989. Thus, petitioners conclude, they are entitled to deduct the additional liability that corresponds to this increased percentage, or $ 29,166. [8]
*73 We disagree with petitioners that they may deduct $ 29,166 in 1989 on account of the claimed discharge from liability of two of the Organizers. First, to state the obvious, petitioners are mistaken that two of the Organizers were discharged in 1989. Although two of the Organizers filed for bankruptcy in 1989, only one of them was discharged in that year. Eight of the Organizers remained liable for the Debt as of January 1, 1990. These eight persons' pro rata percentage of the Debt was one-eighth (or $ 9,722.22 more than one-ninth of the Debt). Second, petitioners were jointly and severally liable for the full amount of the Debt. Thus, petitioner's liability for the Debt did not change when the liability of one of the Organizers was discharged in 1989. Petitioner and all of the other Organizers were each liable for 100 percent of the Debt before the discharge, and he and the other Organizers (with the exception of the one who was discharged from liability) were each liable for 100 percent thereafter. S.C. Code Ann. sec. 36-3-118(e) (Law. Co-op. 1977); United Carolina Bank v. Caroprop, Ltd., 446 S.E.2d 415 (S.C. 1994). Contrary to petitioners' *74 claims, nothing in the record convinces us that petitioner was solely liable for any of the Debt that was initially attributable to the pro rata portion of the Organizer who was discharged from liability in 1989. Petitioners have also not established that any of the Debt was uncollectible from any of the other Organizers (other than the one who was discharged in bankruptcy) at the end of 1989. Even if we were to assume, arguendo, that petitioners knew without question that petitioner, personally, would pay this additional amount, our conclusion would not change. Because petitioners are cash basis taxpayers, their claimed additional liability, if deductible at all, would not be deductible before they actually paid it. Helvering v. Price, 309 U.S. 409 (1940); Eckert v. Burnet, 283 U.S. 140, 141-142 (1931); see also Zappo v. Commissioner, 81 T.C. 77, 87-88 (1983). We hold for respondent on this issue. We have considered all arguments made by petitioners, and, to the extent not addressed above, find them to be without merit. To reflect the foregoing, Decision will be entered for respondent *75 . Footnotes
1. Petitioners conceded that: (1) $ 64,930 of income that they received in 1989 is subject to self-employment tax under sec. 1401, (2) they are not entitled to an $ 800 medical expense deduction, and (3) any deficiency in their 1989 Federal income tax is subject to the addition to tax under sec. 6651(a)(1).↩
2. As an example of one of these costs, the Organizers spent $ 350,000 to buy a building and land for Bank.↩
3. Of the three Organizers who filed for bankruptcy and were discharged from liability for the Debt, one filed in 1989 and was discharged in 1989; one filed in 1989 and was discharged in 1990; and one filed in 1990 and was discharged in 1990.↩
4. During July 1989, the Organizers had sold the real estate that was purchased for Bank, and had applied the sale proceeds to the Debt reducing it to $ 700,000.↩
5. Petitioners elected to relinquish any carryback of this NOL.↩
6. In this regard, we find petitioner's limited testimony on participation and solicitation to be self-serving and unreliable. We also find this testimony unsupported by any other evidence.↩
7. We normally would not address this issue because petitioners did not raise it in their petition. Rule 34(b)(4) and (5); see also Rollert Residuary Trust v. Commissioner, 80 T.C. 619, 636 (1983), affd. 752 F.2d 1128 (6th Cir. 1985); Jarvis v. Commissioner, 78 T.C. 646, 658↩ (1982). Petitioners, however, raised this issue at trial, and respondent did not object to it. Therefore, we consider the petition to have been properly amended to include the issue. Rule 41(b)(1).
8. We are unsure of the manner in which petitioners have calculated this claimed increased liability of $ 29,166. Petitioners have apparently determined this amount by taking the portion of $ 700,000 that corresponds to three times the increase in liability from one-ninth to one-eighth.↩