129 T.C. No. 4


UNITED STATES TAX COURT



EVAN AND CAROL MARCUS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10679-05.                    Filed August 15, 2007.


        In a series of transactions between 1998 and
2000, P exercised incentive stock options (ISOs),
acquiring 40,362 shares of V stock.  In 2001, Ps sold
30,297 V shares for $1,688,875.  Ps had a regular tax
basis in these shares equal to the exercise price,
$127,920.  Ps had an adjusted alternative minimum tax
(AMT) basis in these shares equal to the exercise
price increased by the amount included in alternative
minimum taxable income (AMTI) by reason of the
exercise of the ISOs, $4,472,288.

        Ps argue that the difference between the adjusted
AMT basis and the regular tax basis of the V shares
sold is an adjustment under sec. 56(b)(3), I.R.C., and
therefore creates an alternative tax net operating
loss (ATNOL) under sec. 56(d), I.R.C.  Ps argue that
the ATNOL may be carried back to reduce their AMTI in
2000.

Held: The difference between the adjusted AMT basis and the regular tax basis of stock received through the exercise of an ISO is not a tax adjustment taken into account in the calculation of an ATNOL in the year the stock is sold.

Don Paul Badgley and Brian G. Isaacson, for petitioners.

Julie L. Payne, for respondent.

OPINION

HAINES, Judge: Respondent determined deficiencies in petitioners' Federal income taxes of $491,829 and $178,664 for the years 2000 and 2001 (years at issue), respectively. After concessions,[1] the issue for decision is whether petitioners may increase their 2001 alternative tax net operating loss (ATNOL) by the difference between the adjusted alternative minimum tax (AMT) basis and the regular tax basis of stock received through the exercise of incentive stock options (ISOs) in 2000, but sold in 2001.

---

[1]Respondent concedes that petitioners are not liable for accuracy-related penalties under sec. 6662 for the years at issue, and that petitioners' 2001 capital gain will be reduced by $58,244. Petitioners concede that they are required to report additional capital gain of $15,147 for 2000.

Background

The parties submitted this case fully stipulated pursuant to Rule 122.[2] The parties' first through fifth stipulations of facts, along with the attached exhibits, are incorporated herein by this reference. Petitioners (husband and wife) resided in Fairlawn, New Jersey, at the time the petition was filed. All references to petitioner in the singular are to petitioner Evan Marcus.

On October 14, 1996, petitioner began employment as Senior Staff Systems Engineer at Veritas Software Corporation (Veritas). He was employed by Veritas through 2001. As part of his compensation package, petitioner was granted several ISOs to purchase Veritas common stock.[3]

Petitioner exercised ISOs in transactions beginning November 18, 1998, and ending March 10, 2000, acquiring 40,362 shares of Veritas common stock. Petitioner paid $175,841 to exercise the ISOs, acquiring shares with an aggregate fair market value of $5,922,522 on the various dates of exercise. Petitioners held their Veritas shares for investment purposes and not as dealers

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Amounts are rounded to the nearest dollar.

[3]During the years in question, Veritas shares underwent a number of stock splits. All data set forth below reflect these stock splits.

or traders.  During 2001, petitioners sold 30,297 Veritas shares acquired by the exercise of ISOs, for a total of $1,688,875.[4]

Petitioners timely filed their 2000 Federal income tax return.  On the return, petitioners reported regular taxable income of $315,472, regular tax of $58,427, alternative minimum taxable income (AMTI) of $5,990,714, AMT of $1,602,874, and total tax of $1,661,301.  On March 6, 2003, petitioners filed their first amended 2000 return, reporting regular taxable income of $261,835, regular tax of $56,039, AMTI of $4,180,033, AMT of $1,099,051 and total tax of $1,155,090.  Petitioners claimed a refund of $506,451.  On May 12, 2003, respondent issued a check to petitioners in the amount of $575,471, representing a refund of 2000 income tax of $506,211 and interest thereon of $69,260.

Petitioners timely filed their 2001 Federal income tax return.  On the return, petitioners reported regular taxable income of $467,505, regular tax of $105,600, AMTI of negative $3,537,753, AMT of zero and total tax of zero.  On March 6, 2003, petitioners filed with respondent their first amended 2001 income tax return, reporting regular taxable income of $1,897,072, regular tax of $414,212, AMTI of negative $2,249,867, AMT of zero, and total tax of zero.

---

[4]The options qualified for incentive stock option treatment under secs. 421(a) and 423(a).

Petitioners attempted to file three other amended returns. On April 15, 2003, petitioners submitted their second amended 2000 return, and second amended 2001 return, which were both designated "Notice of protective/incomplete claim." Respondent did not process these returns. On January 26, 2004, petitioners submitted their third amended 2000 return, which respondent did not process.

On March 14, 2005, respondent issued a notice of deficiency to petitioners with respect to 2000 and 2001. With respect to 2000, respondent denied petitioners' claimed ATNOL deduction, carried back from 2001, of $1,909,562, resulting in a deficiency of $491,829. With respect to 2001, respondent reduced petitioners' prior year minimum tax credit from $414,212 to $213,748, resulting in a deficiency of $178,664.

## Discussion

### A.    The Alternative Minimum Tax and Incentive Stock Options

Generally, a taxpayer is not required to recognize income upon the grant or exercise of an ISO. Sec. 421(a). Although a taxpayer generally defers tax liability resulting from the exercise of ISOs until the taxpayer later sells the stock, the taxpayer may nevertheless incur AMT liability. Secs. 56(b)(3), 421(a). This is because the AMT, a tax imposed in addition to all other taxes, is determined with respect to a taxpayer's AMTI,

an income base broader than that applicable for regular tax purposes. Allen v. Commissioner, 118 T.C. 1, 5 (2002).

AMTI is defined as the taxable income of a taxpayer determined with adjustments provided in sections 56 and 58, and increased by items of tax preference described in section 57. Sec. 55(b)(2); Merlo v. Commissioner, 126 T.C. 205, 209 (2006), affd. ___ F.3d ___ (5th Cir., July 17, 2007); Allen v. Commissioner, supra at 5. Pertinent to this case, for purposes of computing a taxpayer's AMTI, section 56(b)(3) provides that section 421 shall not apply to the transfer of stock acquired pursuant to the exercise of an ISO. Therefore, the spread between the exercise price and the fair market value of the stock on the date of exercise is treated as an item of adjustment and is included in AMTI.[5] Sec 83(a); Tanner v. Commissioner, 117 T.C. 237, 242 (2001), affd. 65 Fed. Appx. 508 (5th Cir. 2003); sec. 1.83-7(a), Income Tax Regs.

As a result of these differing treatments, a taxpayer subject to the AMT has two different bases in the shares of stock he received upon exercising the ISO: a regular basis and an adjusted AMT basis. Merlo v. Commissioner, supra at 209; Spitz v. Commissioner, T.C. Memo. 2006-168. The taxpayer's regular basis is the exercise price. See sec. 1012. The adjusted AMT

---

[5]If the taxpayer's rights in the shares are subject to a substantial risk of forfeiture or not transferable, income is not recognized at the time of exercise. Sec. 83(a).

basis is the exercise price increased by the amount of income included in AMTI by reason of the exercise of ISOs.  Sec. 56(b)(3); <u>Merlo v. Commissioner</u>, <u>supra</u> at 209-210.

With respect to the 30,297 Veritas shares sold in 2001, petitioners had a regular tax basis of $127,920, the exercise price.  Petitioners had an adjusted AMT basis of $4,472,288, consisting of the $127,920 exercise price and $4,344,368 of gain included in AMTI by reason of the exercise of the ISOs in the year exercised.[6]

B.  <u>Incentive Stock Options and the Alternative Tax Net Operating Loss</u>

Generally, a taxpayer may carry back a net operating loss (NOL) to the 2 taxable years preceding the loss, then forward to each of the 20 taxable years following the loss.  Sec. 172(b)(1)(A).  For AMT purposes, taxpayers take an ATNOL deduction in lieu of an NOL deduction.  Sec. 56(a)(4).  An ATNOL deduction is defined as "the net operating loss deduction allowable for the taxable year under section 172," subject to exceptions and adjustments under section 56(d).  Sec. 56(d)(1). The NOL deduction under section 172 is defined as "the excess of

---

[6]Petitioners sold the 30,297 shares of Veritas stock for $1,688,875.  Therefore, petitioners realized regular tax capital gain of $1,560,955 and an AMT capital loss of $2,783,413.

the deductions allowed by this chapter over the gross income", as modified by section 172(d).[7]  Sec. 172(c).

The ATNOL is then calculated by taking into account adjustments to taxable income under sections 56 and 58, and preference items under section 57.[8]  Sec. 56(d)(1)(B)(i), (2)(A); Montgomery v. Commissioner, 127 T.C. 43, 65-66 (2006); Merlo v. Commissioner, supra at 213.  Petitioners argue that the difference between the adjusted AMT basis and the regular tax basis of the Veritas shares sold in 2001, $4,344,368, is an adjustment to their ATNOL under section 56(b)(3).[9]

The applicable statutes do not provide for such an adjustment.  Section 56(b)(3) provides in part:

---

[7]Sec. 172(d) provides that in the case of a noncorporate taxpayer, the amount deductible on account of capital losses cannot exceed the amount includable on account of capital gains. Sec. 172(d)(2)(A); Erfurth v. Commissioner, 77 T.C. 570, 576 (1981); sec. 1.172-3(a)(2), Income Tax Regs.  As a result, excess capital losses are excluded when computing an NOL under sec. 172(c).  Montgomery v. Commissioner, 127 T.C. 43, 65-66 (2006); Merlo v. Commissioner, 126 T.C. 205, 209 (2006), affd. ___ F.3d ___ (5th Cir., July 17, 2007); Spitz v. Commissioner, T.C. Memo. 2006-168.  Petitioners concede that their AMT capital loss resulting from the sale of their Veritas shares is not included in the calculation of an ATNOL.

[8]Sec. 57 preference items are considered only to the extent they increase the NOL for the year for regular tax purposes. Sec. 56(d)(2)(A).

[9]Absent an event causing an adjustment to the bases, such as the death of the stockholder, see sec. 1014, the difference between the bases will be the same as the amount of income included in AMTI on account of the exercise of the ISO.

SEC. 56(b). Adjustments Applicable to Individuals.-- In determining the amount of the alternative minimum taxable income of any taxpayer (other than a corporation), the following treatment shall apply * * *:

* * * * * * *

(3) Treatment of Incentive Stock Options.-- Section 421 shall not apply to the transfer of stock acquired pursuant to the exercise of an incentive stock option (as defined in section 422). * * *

Section 421(a) provides in pertinent part:

SEC. 421(a). Effect of Qualifying Transfer.-- If a share of stock is transferred to an individual in a transfer in respect of which the requirements of section 422(a) or 423(a) are met--

(1) no income shall result at the time of the transfer of such share to the individual upon his exercise of the option with respect to such share;

As stated above, under section 421(a), gain is not recognized for regular tax purposes on the exercise of an option that qualifies as an ISO. Therefore, the only adjustment under section 56(b)(3) is the recognition of gain for AMT purposes when stock is transferred to an individual upon the exercise of an ISO. The adjustment is made in the year of exercise. The statutes do not provide for an adjustment in the year of sale.

To support their position, petitioners cite Staff of the Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1986, at 437 (J. Comm. Print 1987), which states:

The structure for the alternative minimum tax on individuals generally is the same as under prior law, except that adjustments are made to reflect the fact

that certain deferral preferences (such as accelerated depreciation) cannot be treated simply as add-ons if total income is to be computed properly over time.  For such preferences, the minimum tax deduction may <u>in some instances exceed the regular tax deduction (e.g. in the later years of an asset's life), thus ensuring that basis will be fully recovered under both the regular and the minimum tax systems</u>. * * * [Emphasis added; fn. ref. omitted.]

Petitioners' reliance is misplaced.  Basis recovery through depreciation deductions for property used in a trade or business or for production of income is not analogous to the recovery of basis for stock, a nondepreciable capital asset.  Basis of stock may be recovered under both the regular and the AMT systems, but when that stock is sold at a loss, respect must be given to the limitations on capital losses that are provided in sections 1211, 1212, and 172(d)(2).  These provisions are equally applicable to the AMT as well as the regular tax system.  <u>Montgomery v. Commissioner</u>, <u>supra</u>; <u>Merlo v. Commissioner</u>, <u>supra</u>; <u>Spitz v. Commissioner</u>, T.C. Memo. 2006-168.

We therefore hold that the difference between the adjusted AMT basis and the regular tax basis of stock received by ISO is not a tax adjustment taken into account in the calculation of an ATNOL in the year the stock is sold.  Furthermore, the sale of petitioners' Veritas stock received through the exercise of ISOs is a sale of a capital asset and thus does not create an ATNOL due to the restrictions of section 172(d).  <u>Merlo v. Commissioner</u>, <u>supra</u>.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.