**KELLER INDUSTRIES, INC.,**
Plaintiff-Appellee,

v.

**Donald W. WALDEN, Defendant-Appellant.**

No. 71–1364.

United States Court of Appeals,
Fifth Circuit.

June 20, 1972.

Rehearing Denied Aug. 23, 1972.

Fred A. Jones, Jr., Richard W. Aschenbrenner, Miami, Fla., for defendant-appellant.

John L. Britton, Carmen A. Accordino, Feibelman, Friedman, Britton & Stettin, Miami, Fla., for plaintiff-appellee.

G. Bradford Cook, Gen. Counsel, Walter P. North, Associate Gen. Counsel, Patricia H. Latham, Atty., S. E. C., Washington, D. C., for the Securities and Exchange Comm., amicus curiae.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

In February 1969, Appellant, Donald Walden, an officer-director of Keller Industries, Inc., sold at considerable profit some 650 shares of Keller stock which he had acquired less than 6 months before pursuant to the exercise of certain qualified and restricted stock options. Keller, undoubtedly sensitive to the pressure from the Securities and Exchange Commission, instituted this action under Section 16(b) of the Securities Exchange Act[1] to recover for the corporation the profits received by virtue of this transaction.[2]

---

1. 15 U.S.C.A. § 78p(b).

2. The total profits recovered—which were calculated in accordance with Rule 16b–6, 17 C.F.R. 240.16b–6—amounted to $19,624.84.

The Trial Court, determining that there were no controverted issues of fact and further concluding that Rule 16b–3, Rules Under the Securities Exchange Act of 1934, 17 C.F.R. 240.16b–3, did not provide Walden an exemption from Section 16(b) coverage, rendered summary judgment in favor of Keller Industries.

The facts are undisputed. In September 1968, and February 1969, Walden, vice president and director of Keller Industries, acquired some 650 shares of Keller common stock upon the exercise of options he had received from Keller pursuant to restricted or qualified plans.[3] On February 10, 1969, Walden sold 350 of these shares and on February 26, 1969, sold the remaining 300 shares. The profits he received from the subject transactions were considerable.

As it is uncontroverted that Walden, an insider, sold the stock within 6 months of its acquisition, the key to the case is whether or not the Trial Court correctly interpreted Rule 16b–3, *supra,* as not providing him an exemption.[4] On oral argument we directed that the Securities and Exchange Commission be requested to state its views. This it has done in a formal memoranda which agrees with Keller's view that the Court was right. Conscious that the "penalty" for a nonpurposeful violation is heavy indeed, we nonetheless agree and affirm.

### The Rule 16b–3 Exemption

Here, as well as in the District Court, Appellant has placed great reliance upon cases decided before the adoption of the present rule. Particular emphasis has been placed upon Continental Oil Co. v. Perlitz, S.D.Tex., 1959, 176 F.Supp. 219, where then District Judge Ingraham held that shares acquired pursuant to the exercise of a restricted option were exempt from the provisions of Section 16(b) by virtue of the then governing rule. Indeed, that rule did provide an exemption for shares acquired upon the exercise of options.[5] Although Appellant has seemingly overlooked this fact, the rule has been changed.

The present rule, which has been in effect since June 27, 1960, provides:

"Any acquisition of shares of stock (other than stock acquired upon the exercise of an option, warrant or right) pursuant to a stock bonus, profit sharing, retirement, incentive, thrift, savings or similar plan, or any

3. During the years 1960, 1961, and 1966, Appellant received from Keller restricted and qualified options (depending upon their date of issuance) which he still owned when he became a vice president and director in 1967. In September 1968 and February 1969, Walden exercised these options at prices which ranged from $9.20 per share to $29.25 per share. In February 1969, he sold all the stock so acquired at prices ranging from $55.00 per share to $60.75 per share.

4. It is, of course, axiomatic that under the objective standards imposed by Section 16(b), there is no room for inquiry into either the subjective intention of the insider or even into the question of whether or not he was in fact trading on inside information. The purpose of this somewhat arbitrary rule is rooted in the fact that the Section was designed to eliminate not only the actual trading on inside information, but also conditions which give rise to possibilities for such trading. The insider is charged with the responsi-

bility of strictly observing the provisions and he must bear the consequences for even inadvertent miscalculations. Bershad v. McDonough, 7 Cir., 1970, 428 F.2d 693, 696, cert. denied, 1971, 400 U.S. 992, 91 S.Ct. 458, 27 L.Ed.2d 440. As it is undisputed that Walden—an insider—sold the stock within 6 months of its acquisition, his only chance to keep the profits he received was to demonstrate that he was exempted from the coverage of Section 16(b).

5. The old Rule 16b–3 provided: "Any acquisition of non-transferrable options or shares of stock *including stock acquired pursuant to such options* by a director or officer of the issuer of such stock shall be exempt from the operation of section 16(b) of the Act if the stock or option was acquired pursuant to a bonus, profit-sharing, retirement, stock option, thrift, savings or similar plan meeting all the following conditions: * * *." (Emphasis added).

acquisition of a qualified or a restricted stock option pursuant to a qualified or a restricted stock option plan, or of a stock option pursuant to an employee stock purchase plan, by a director or officer of the issuer of such stock or stock option shall be exempt from the operation of section 16(b) of the Act if the plan meets the following conditions: * * * "

Specifically—albeit parenthetically—the rule excepts from this exemption from Section 16(b) coverage, stock acquired upon the exercise of an option. Appellant contends, however, that this specific exception does not include stock acquired pursuant to the exercise of qualified or restricted options.

In response to considerable criticism concerning the old rule (see note 5, *supra*) in Greene v. Dietz, 2 Cir., 1957, 247 F.2d 689,[6] the Commission in its November 5, 1959, Notice of Proposed Amendment of Rule 16b–3, made specific recommendations.[7]

The present rule, which excepts from the exemption stock acquired pursuant to the exercise of an option, warrant or right, was adopted shortly thereafter. Discounting the clear wording of the rule in its present form, Appellant contends that the exception does not include stock acquired upon the exercise of a qualified or restricted option because such "options as well as the stock acquired thereunder by their very nature

tend to purge themselves from any likelihood that the optionee would be trading on inside information." This argument is without merit.

The Rule 16b–3 exemption is conditioned on the compensation plan, etc., having been created and operated in compliance with the requirements set out in subsections (a) through (d) of the rule. Although these stringent requirements may very well do away with trading on inside information concerning the *issuance* of the option—indeed, the rule provides an exemption for this very reason—the same does not hold true in terms of the inhibiting effect of the requirements upon the insider's *exercise* of the option issued to him in compliance with the provisions or his subsequent decision to sell such acquired stock. Indeed, the factors bearing upon his decision to exercise the qualified or restricted option cannot be said to be materially different in a Section 16(b) sense from those influencing a decision to exercise any option or, indeed, the decision to purchase or sell securities on the open market.

Likewise, the fact that a holder of qualified or restricted options must retain the option or share acquired upon the exercise of the option for a certain period of time in order to receive favorable § 421(a) tax treatment, has no bearing whatsoever on the ultimate inquiry.[8]

---

6. See also Perlman v. Timberlake, S.D. N.Y., 1959, 172 F.Supp. 246.

7. "1. We recommend that the Commission amend the rule to delete the exemption afforded for the acquisition of securities upon the exercise of stock options.
"2. We recommend that the exemption now provided by Rule 16b–3 be retained, subject to certain modifications, insofar as it relates to the acquisition of 'restricted' options pursuant to the restricted option plan, or shares of stock (except stock acquired upon the exercise of an option, warrant or right) pursuant to a bonus, retirement, thrift, savings, profit sharing plan."
Exchange Act of 1934 Release No. 6111.

8. The requirements concerning the period of retention by the optionee of restricted options (those options Appellant received in 1960 and 1961) are contained in 26 U.S.C.A. § 424(a), which basically provides that no disposition of a share acquired pursuant to the exercise of a restricted option may be made by the individual within two years from the granting of the option to him or within six months after the transfer of the share to him pursuant to his exercise of the option.

Optionee retention requirements for qualified options (those Appellant received in 1966) are contained in 26 U.S. C.A. § 422(a), which provides that there

Although the "carrot"—in terms of the favorable tax treatment afforded under § 421(a)—does provide motivation for the insider to forego sale of securities within 6 months of their acquisition pursuant to the exercise of a qualified or restricted option, the "stick" is a small one in the sense that all the insider has to lose is that which he had to gain. In any event, "the possible inhibiting effects of tax provisions upon the security transactions of insiders is a matter completely apart from that of defining the power of the Securities and Exchange Commission to promulgate a regulation that may permit an abuse sought to be eliminated by Section 16(b) of the very Act of Congress that created the Commission for the purpose of enforcing the Act." Greene v. Dietz, *supra*, 247 F.2d at 694.

The rule is clearly worded and we are persuaded that it means exactly what it says. Stock acquired upon the exercise of an option—even though qualified or restricted under tax laws—does not fall within the exemption.

Affirmed.

be no disposition of a share by an individual within a three year period, which begins on the day after the transfer of the share to him pursuant to the exercise of the option.

Loss of the favorable tax treatment afforded by 26 U.S.C.A. § 421(a) is the only consequence flowing from noncompliance with the above mentioned requirements.