117 T.C. No. 20


UNITED STATES TAX COURT



PAUL A. TANNER, SR. AND BEVERLY N. TANNER,
Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5738-00.                    Filed December 10, 2001.



        P planned to acquire control of C, a corporation.
C required P to sign a lockup agreement, which
restricted P's sale of any C stock.  The agreement
provided that, if P sold the stock within 2 years of
its acquisition, he would be subject to sec. 16(b) of
the Securities Exchange Act of 1934.

        On July 9, 1993, P received a nonstatutory
employee stock option from C.  On Sept. 7, 1994, P
exercised this stock option.  P pledged some of this
stock as collateral for a loan, and the stock was sold
by the lender.

        C issued P a Form 1099 for 1994 reporting income
from P's exercise of the stock option.  On the basis of
the Form 1099, R issued a notice of deficiency for 1994
determining that P received "other income" of $728,000
--the difference between the option price and the price

the stock was selling for on the date the option was exercised.

Held: Sec. 83(c)(3), I.R.C., is inapplicable because the 6-month restricted period under sec. 16(b) of the Securities Exchange Act of 1934 commenced on the date of grant of the option and expired by the date of exercise.

Held, further, for purposes of sec. 83(c)(3), I.R.C., the 6-month period provided by sec. 16(b) of the Securities Exchange Act of 1934 cannot be extended.

Held, further, upon the exercise of his option, P realized income in the amount of the difference between the fair market value of the shares received over the amount paid as the exercise price. Sec. 83(a), I.R.C.

Held, further, the assessment of a deficiency is not barred by the statute of limitations because there was a substantial omission of income. Sec. 6501(e), I.R.C.

Claude R. Wilson, Jr., for petitioners.

Audrey M. Morris, for respondent.

VASQUEZ, Judge:  Respondent determined a deficiency of $286,659 in petitioners' 1994 Federal income tax.  On their 1994 tax return, petitioners reported income from wages of $161,067.

The issues for decision are:  (1) Whether petitioners had unreported income of $728,000 in 1994 from the exercise of an employee nonstatutory stock option; and (2) whether respondent

proved a substantial omission of income under section 6501(e)[1] to extend the period of limitations to 6 years.[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time they filed their petition, Paul Tanner (hereinafter, petitioner) and Beverly Tanner resided in Dallas, Texas.[3]

At the time of trial, petitioner was 70 years old and retired. Before his retirement, petitioner bought, sold, and invested in private and public companies. In 1992, petitioner planned to acquire control of Polyphase Corp. (Polyphase).

Before Polyphase entered into negotiations with petitioner, it required petitioner to sign a "lockup agreement". This lockup agreement was a contractual obligation that restricted for 2 years petitioner's ability to dispose of any Polyphase stock that he might acquire while he had more than 5 percent beneficial ownership in the corporation.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

[2]  Petitioners also argue that they are entitled to a deduction for personal exemptions of $4,900.  As the deduction for personal exemptions is computational, we leave it for the parties to compute in accordance with this decision.

[3]  Petitioners filed a joint return for the 1994 taxable year.

On September 21, 1992, petitioner signed the lockup agreement.  The lockup agreement further provided:

> Should I sell these shares I agree that such sale will be subject to Section 16b of The Securities Act of 1934 (Disgorgement of Insider Short-Swing Profits) and further I will be subject to any additional damages incurred by Polyphase Corporation, its directors or shareholders.

The lockup agreement provided that, after the 2-year period, petitioner would be allowed to sell his shares if permitted under rule 144 of the Securities Exchange Act.  Additionally, the lockup agreement provided that the sale restriction could be altered only by the unanimous action of the board of directors. The lockup agreement, however, allowed petitioner to use the shares as collateral if the sale restriction also applied to the lender.

By December 1992, while owning, directly and indirectly, approximately 65 percent of Polyphase, petitioner became chairman of the board, chief executive officer, and president of Polyphase.

On July 9, 1993, petitioner received a nonstatutory employee stock option from Polyphase.  The stock option agreement gave petitioner the right to purchase up to 182,000 shares of Polyphase common stock at an exercise price of 75 cents per share.  The stock option agreement contained several restrictions upon the exercise of the option:  The option would terminate if petitioner voluntarily terminated his employment with Polyphase;

the option was nonassignable and nontransferable; and only petitioner could exercise the option.

On September 7, 1994, petitioner exercised the stock option and paid Polyphase $136,500 (i.e., 182,000 shares at 75 cents each). In order to finance the exercise of the option, petitioner obtained a loan from a friend, Mr. Don Ruben, and pledged 122,000 Polyphase shares as collateral for the loan. Sometime after the pledge of stock, Mr. Ruben sold the stock.

Of the remaining 60,000 shares, in December 1994, petitioner gave 40,000 shares to his son and 20,000 shares to his brother-in-law.

On February 21, 1996, Polyphase issued a Form 1099 to petitioner reporting "other income" of $728,000 for the 1995 taxable year. The amount is the difference between the option price of 75 cents per share and the price the stock was selling for on the date that the option was exercised. On January 15, 1999, respondent issued a notice of deficiency for the 1995 taxable year which determined that petitioner received additional income of $728,000. On April 19, 1999, petitioner filed a petition with the Court to dispute, among other items, this additional income.

After respondent's determination for 1995, on October 21, 1999, Polyphase issued a corrected Form 1099 for the 1995 taxable year reporting "other income" as "None". In addition, on the

same day, Polyphase issued a Form 1099 to petitioner for the 1994 taxable year reporting "other income" of $728,000.

On April 7, 2000, respondent issued a notice of deficiency to petitioner for the 1994 taxable year, determining that petitioner received "other income" of $728,000.[4]  Respondent conducted no examination of petitioner's books and records before issuing the notice of deficiency for 1994.  The sole basis for the proposed adjustment was the Form 1099 from Polyphase to petitioner.  On May 22, 2000, petitioner filed a petition with the Court disputing that he had "other income" of $728,000 for 1994.[5]

OPINION

A.   Is the Exercise of the Polyphase Stock Option Subject To Taxation Under Section 83(a)?

Petitioner argues that his exercise of the stock option was not subject to taxation under section 83(a).  Petitioner contends that the exercise was exempted under section 83(c)(3) because a sale of the stock would have given rise to suit under section 16(b) of the Securities Exchange Act of 1934, ch. 404, 48 Stat. 896, 15 U.S.C. sec. 78p(b) (1994) (hereinafter, section 16(b)).

---

[4]   In addition, respondent disallowed a deduction of $4,900 for personal exemptions.  With the addition of the "other income" of $728,000, respondent determined that petitioners had too much income to qualify for the deduction.

[5]   On May 25, 2000, a stipulated decision was entered dismissing the petition for the 1995 taxable year (docket No. 7281-99).

Petitioner further argues that the stock purchased from the option exercise was nontransferable and subject to a substantial risk of forfeiture because petitioner was subject to section 16(b) for a period of 2 years under the lockup agreement.

Respondent argues that, upon exercise of the stock option, petitioner recognized compensation income under section 83. Respondent counters that the shares were not subject to section 83(c)(3) when petitioner exercised the option on September 7, 1994, because the section 16(b) limitation had expired. Respondent contends that the 6-month period in which petitioner was prohibited from selling the securities under section 16(b) began when the option was granted, not exercised. Respondent argues that, under a 1991 amendment to section 16(b), any acquisition of an option involves a "purchase" for section 16(b) purposes, and section 16(b) liability is triggered by either a "purchase and sale" or a "sale and purchase". Because the option was granted on July 9, 1993, respondent contends that the 6-month period of section 16(b) liability would have expired by the time petitioner exercised the stock option (i.e., September 7, 1994). Therefore, respondent argues that the section 83(c)(3) exception does not apply and that exercise was subject to taxation under section 83(a).

Respondent further argues that petitioner and Polyphase may not extend the statutory 6-month period of section 16(b)

liability through their lockup agreement.  Respondent contends that there is no provision that allows individuals or corporations to voluntarily extend section 16(b) liability.

### 1.  Is the Burden of Proof on Respondent?

As a preliminary matter, petitioner argues that the burden of proof is on respondent because respondent issued a notice of deficiency based solely upon a Form 1099 issued by Polyphase, rather than conduct an examination of petitioner.  Petitioner argues that Portillo v. Commissioner, 932 F.2d 1128 (5th Cir. 1991), revg. T.C. Memo. 1990-68, and 988 F.2d 27 (5th Cir. 1993), revg. T.C. Memo. 1992-99, and sections 7491(a) and 6201(d) place the burden on respondent.

We do not find that the resolution of this case depends on which party has the burden of proof.  We resolve the issues on the basis of a preponderance of evidence in the record.  Assuming arguendo that respondent does have the burden of proof, we still conclude, on the basis of evidence in the record, that petitioner had $728,000 of additional income, for the reasons outlined below.

### 2.  Section 83(a)

Section 83(a) generally provides that when property is transferred to a taxpayer in connection with the performance of services, the fair market value of the property at the first time the taxpayer's rights in the property are transferable or not

subject to a substantial risk of forfeiture, less the amount paid for the property, is includable in the taxpayer's gross income. Kolom v. Commissioner, 71 T.C. 235, 241 (1978).  Therefore, property must be substantially vested for the transferee to be regarded as the owner of the property, and, thus, taxed upon its receipt.  See sec. 1.83-1(a)(1), Income Tax Regs.

Under the regulations, property is substantially vested "when it is either transferable or not subject to a substantial risk of forfeiture".  Sec. 1.83-3(b), Income Tax Regs.  Property is transferable:

> if the person performing the services or receiving the property can sell, assign, or pledge (as collateral for a loan, or as security for the performance of an obligation, or for any other purpose) his interest in the property to any person other than the transferor of such property and if the transferee is not required to give up the property or its value in the event the substantial risk of forfeiture materializes.

Sec. 1.83-3(d), Income Tax Regs.  Property is subject to a substantial risk of forfeiture "if such person's rights to full enjoyment of such property are conditioned upon the future performance of substantial services by any individual."  Sec. 83(c)(1); sec. 1.83-3(c), Income Tax Regs.

The grant of the option at issue was not a taxable event. See Commissioner v. LoBue, 351 U.S. 243, 249 (1956); McDonald v. Commissioner, 764 F.2d 322, 326 (5th Cir. 1985), affg. T.C. Memo. 1983-197.  The exercise of an option, however, may subject the

holder of the option to taxation under section 83(a) if the holder's rights in the purchased stock are transferable or are not subject to a substantial risk of forfeiture.  Sec. 83(a); sec. 1.83-7(a), Income Tax Regs., infra p. 15.  Under certain circumstances, however, section 83(c)(3) prevents taxation under section 83(a) when the sale of the property at a profit could subject a person to suit under section 16(b).  If the seller could be subject to suit under section 16(b), then "such person's rights in such property are (A) subject to a substantial risk of forfeiture, and (B) not transferable".

    3.    <u>Section 16(b)</u>

Section 16(b) provides that a corporate insider who sells any equity security of the issuer within 6 months after the date of issuance of any equity security of the issuer to the insider for a profit must return that profit to the issuing corporation ("short-swing profit rule").  15 U.S.C. sec. 78p(b); see <u>Gresham v. Commissioner</u>, 79 T.C. 322, 328 (1982), affd. 752 F.2d 518 (10th Cir. 1985); <u>Kolom v. Commissioner</u>, <u>supra</u> at 237 n.3; <u>Davis v. Commissioner</u>, 17 T.C. 549, 550 (1951).  Section 16(b), in relevant part, provides:

> For the purpose of preventing the unfair use of
> information which may have been obtained by such
> beneficial owner, director, or officer by reason of his
> relationship to the issuer, any profit realized by him
> from any purchase and sale, or any sale and purchase,
> of any equity security of such issuer (other than an
> exempted security) within any period of less than six

months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. * * *

15 U.S.C. sec. 78p(b).  The purpose of the section is to eliminate trading on insider information and eliminate conditions that would give rise to possibilities for such trading.  Keller Indus. v. Walden, 462 F.2d 388, 389 n.4 (5th Cir. 1972).

4.    When Does the 6-month Restricted Period Under Section 16(b) Begin To Run?

We find that the 6-month restricted period under section 16(b) commences on the date of grant.  In 1991, the Securities and Exchange Commission adopted amendments to the section 16(b) rules to clarify how the section applies to derivative securities, including options.[6]  Magma Power Co. v. Dow Chem. Co., 136 F.3d 316, 321 (2d Cir. 1998).  The amendments recognized that holding options is "functionally equivalent" to holding the underlying equity securities for section 16(b) purposes because the value of the option is related to the value of the underlying security.  Final rules and solicitation of comments:  Ownership

---

[6]  A "derivative security" is defined to include options with a fixed exercise price, like the one in issue.  Final rules and solicitation of comments:  Ownership Reports and Trading by Officers, Directors and Principal Security Holders, 56 Fed. Reg. 7242, 7252 (Feb. 21, 1991).

Reports and Trading by Officers, Directors and Principal Security Holders, 56 Fed. Reg. 7242, 7248 (Feb. 21, 1991).  Similar to how an insider's opportunity for profit begins when he purchases stock, the opportunity for profit begins when an insider purchases or acquires an option because the insider knows at what price he can obtain stock and can determine the extent of his profit.[7]  Id.

As a result, the amendments require that the acquisition of the option, not its exercise, be deemed the significant event to commence the 6-month restricted period under section 16(b).  Id.  The commentary explains that the exercise of an option merely changes the form of beneficial ownership from indirect to direct, representing "neither the acquisition nor the disposition of a right affording the opportunity to profit".  Id. at 7249.

The parties dispute when the restricted 6-month period of section 16(b) commences.  Respondent argues that, because of the 1991 amendments to the regulations for section 16(b), the 6-month period begins at the date of the grant of the option.  Petitioner concedes that if the 1991 amendment to the regulations for

---

[7]  The rules explain that the amendments adopted do not distinguish between options that are purchased and other options, such as those granted in this case.  Final rules and solicitation of comments:  Ownership Reports and Trading by Officers, Directors and Principal Security Holders, 56 Fed. Reg. at 7251.  Not to treat the employee option grant as a "purchase" for sec. 16(b) purposes would "provide a significant opportunity for the short-swing transactions Congress wished to eliminate."  Id.

section 16(b) is applicable, then respondent "would be correct, at least insofar as the granting of the option being deemed to be a purchase is concerned". Petitioner's only argument that the 1991 amendment does not apply is that the exercise of the option is a "discretionary transaction".

The language to which petitioner refers regarding discretionary transactions is found in 17 C.F.R. sec. 240.16b-3(d), which provides:

> Any transaction involving a grant, award or other acquisition from the issuer (other than a Discretionary Transaction) shall be exempt if: * * * (3) The issuer equity securities so acquired are held by the officer or director for a period of six months following the date of such acquisition, provided that this condition shall be satisfied with respect to a derivative security if at least six months elapse from the date of acquisition of the derivative security to the date of disposition of the derivative security (other than upon exercise or conversion) or its underlying equity security. [Emphasis added.]

Final Rule: Ownership Reports and Trading by Officers, Directors, and Principal Security Holders, 61 Fed. Reg. 30376, 30393 (June 14, 1996). This rule exempts a transaction from section 16(b) (i.e., the transaction would not be subject to section 16(b) liability) if the option is not a discretionary transaction and is held for 6 months from the date of grant before it is disposed of. We note that this regulation became effective in 1996 and does not apply to petitioner's 1994 taxable

year.[8]  Id. at 30376.  We, therefore, find petitioner's argument to be without merit.

We conclude that the 6-month period of section 16(b) began at the "purchase" date--the date of the grant of the option.  If we consider solely the liability created by section 16(b), the section 16(b) period expired before the option was exercised, and section 83(c)(3) is not applicable.

    5.    Does the Lockup Agreement Extend the 6-month Period of Section 16(b) to 2 Years?

Petitioner further argues that the lockup agreement provided by contract that petitioner would be subject to section 16(b) for 2 years instead of only the statutory period of 6 months.  Respondent argues that there is no provision in section 16(b) that allows individuals to voluntarily subject themselves to liability under the statute.

Section 83(c)(3) applies only "So long as the sale of the property at a profit could subject a person to suit under section 16(b)".  Section 1.83-3(j)(1), Income Tax Regs., provides:

> For purposes of section 83 and the regulations thereunder if the sale of property at a profit within six months after the purchase of the property could subject a person to suit under section 16(b) of the Securities Exchange Act of 1934, the person's rights in

---

[8]  We note that discretionary transactions are not excluded in the 1991 version of this regulation.  See Final rules and solicitation of comments:  Ownership Reports and Trading by Officers, Directors and Principal Security Holders, 56 Fed. Reg. at 7270.

the property are treated as subject to a substantial risk of forfeiture and as not transferable until the earlier of (i) the expiration of such six-month period, or (ii) the first day on which the sale of such property at a profit will not subject the person to suit under section 16(b) of the Securities Exchange Act of 1934. * * *

This specific language was included because the notice for the final regulations rejected a proposal to extend the initial 6-month period under section 16(b), even if a suit is still maintainable after the 6-month period.  See Final Regulations: Property Transferred in Connection with the Performance of Services, 50 Fed. Reg. 31712, 31713 (Aug. 6, 1985).  The notice explained that the legislative history to section 83(c)(3) provided only for the 6-month period during which the section 16(b) restriction applies.  See id.; H. Rept. 97-201, at 263 (1981), 1981-2 C.B. 352, 404.  Given the background of the regulation and its language, we conclude that section 83(c)(3) does not apply beyond the initial 6-month period provided in the section 16(b) restriction.

6.    Effect of Section 83(a) on Exercise of Option

The regulations provide:

If section 83(a) does not apply to the grant of such an option because the option does not have a readily ascertainable fair market value at the time of grant, sections 83(a) and 83(b) shall apply at the time the option is exercised or otherwise disposed of, even though the fair market value of such option may have become readily ascertainable before such time.  If the option is exercised, sections 83(a) and 83(b) apply to

the transfer of property pursuant to such exercise, and the employee or independent contractor realizes compensation upon such transfer at the time and in the amount determined under section 83(a) or 83(b). * * *

Sec. 1.83-7(a), Income Tax Regs.

The employee stock option issued to petitioner, because of its lack of transferability, had no ascertainable market value when granted.  See McDonald v. Commissioner, 764 F.2d at 326. Section 83(e)(3) provides that section 83 "shall not apply to the transfer of an option without a readily ascertainable fair market value".  Therefore, in accordance with this regulation and section 83(a), because the option had no readily ascertainable value when granted, upon the exercise of his option, petitioner realized compensation in the amount of the difference between the fair market value of the shares received and the amount paid as the exercise price--$728,000.

B.    Is the Assessment of a Deficiency Barred by the Statute of Limitations?

The parties stipulate that the assessment of a deficiency in this case is barred by the 3-year period of limitations under section 6501(a) unless respondent proves a substantial omission of income under section 6501(e).

Under section 6501(e), the 3-year limitation period is extended to 6 years when a taxpayer omits properly includable income from his or her return in an amount greater than 25

percent of the amount of gross income stated on the return.  See sec. 6501(e)(1)(A).

Petitioner reported gross income of $161,067 on his joint return for the 1994 tax year.  In accord with our holding that petitioner did not report $728,000 from the exercise of his stock option, petitioner's omitted gross income exceeded 25 percent of the gross income reported on the return, and the 6-year assessment period is applicable.  We conclude that the assessment period had not expired at the time respondent mailed the notice of deficiency for petitioner's 1994 taxable year.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not herein discussed, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.