T.C. Summary Opinion 2002-95

UNITED STATES TAX COURT

JOYCE H. SAMS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12430-00S.            Filed July 19, 2002.

Joyce H. Sams, pro se.

<u>Michele A. Yates</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.  The
decision to be entered is not reviewable by any other court, and
this opinion should not be cited as authority.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for the year in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax of $23,243 and a penalty under section 6662(a) of $4,648.60 for 1996. After a concession by respondent,[1] the issues for decision are: (1) Whether $37,828 reported by Joyce Sams, Inc. (Sams, Inc.), on Form 1120S, U.S. Income Tax Return for an S Corporation, is taxable to petitioner; (2) whether petitioner received unreported income of $25,578; (3) whether petitioner is entitled to deduct expenses of $13,279[2] on her individual return that were claimed by Sams, Inc. and disallowed by respondent; (4) whether petitioner is entitled to a claimed loss on Schedule E, Supplemental Income and Loss, of $3,287; (5) whether petitioner is entitled to claimed Schedule E deductions of $1,246; (6) whether petitioner is entitled to the claimed net operating loss (NOL) carryover of $56,699; (7) whether petitioner is entitled to the standard mileage deduction for business miles traveled; and (8) whether petitioner is liable for an accuracy-related penalty under section 6662.

Respondent also determined that petitioner is subject to self-employment tax and to the alternative minimum tax. These adjustments are computational and dependent on the adjustments to income. Therefore, we need not separately address these issues.

---

[1] Respondent conceded $9,740 of the original adjustment of $35,318 of unreported income.

[2] Sams, Inc. deducted $35,866 of expenses on its return of which respondent disallowed $13,279.

Petitioner resided in Charlotte Hall, Maryland, at the time she filed her petition. Some of the facts have been stipulated and are so found. For convenience we combine our findings of fact and conclusions.

## Background

Petitioner has worked as a real estate agent licensed by the State of Maryland since 1980. Petitioner incorporated Sams, Inc. in the State of Maryland in 1980 in order to limit her personal liability from lawsuits which she believed to be potentially substantial. Petitioner refiled the articles of incorporation for Sams, Inc. in 1995. Petitioner was the president and the sole shareholder of Sams, Inc., and the only person providing services purportedly on behalf of Sams, Inc. Sams, Inc. is an S corporation for Federal income tax purposes.

During 1996, petitioner also worked as a broker-sales associate and independent contractor with O'Brien Home Sales, Inc. and O'Brien Realty, Inc. (collectively referred to as O'Brien), a real estate agency, pursuant to the terms of an agent-broker agreement dated March 28, 1991. Although the body of the agreement indicates that petitioner is the sales associate, the signature line indicates that Sams, Inc. is the sales associate.

In addition to her work as a real estate agent, petitioner was involved with other real estate matters in 1996, both as an individual and purportedly on behalf of Sams, Inc. On occasion, petitioner taught real estate classes for O'Brien. Petitioner owned two rental properties in Waldorf, Maryland. In addition, petitioner also maintained and managed rental property by finding and placing tenants for Skyview Farm and managed real estate property for Bill Stallman (the Stallman property). Petitioner received rental checks from the tenants of Skyview Farm and the Stallman property, deposited the checks into her personal checking (the account), and wrote checks to Skyview Farm and Bill Stallman for the amount of the rents paid by the tenant minus her management fee.

On Form 1040, U.S. Individual Income Tax Return, for 1996 petitioner reported income and claimed deductions as follows:

#### Income

| | |
|---|---|
| Taxable interest | $341 |
| Rental real estate, royalties, partnerships, S corporations, trusts, etc. | (10,576) |
| Other income (Net operating loss carryover) | (56,699) |
| Adjusted gross income (negative) | (66,934) |

Petitioner reported income and claimed deductions on Schedule E attached to her individual return as follows:

| Income | Property A | Property B | Total |
|---|---|---|---|
| Rents received | $10,800 | $8,800 | $19,600 |

### Deductions

| | Property A | Property B | Total |
|---|---|---|---|
| Commissions | -0- | 288 | 288 |
| Insurance | 249 | 222 | 471 |
| Mortgage interest | 7,597 | 7,281 | 14,878 |
| Taxes | 1,457 | 1,140 | 2,597 |
| Utilities | -0- | 9 | 9 |
| Association dues | -0- | 188 | 188 |
| Painting and decorating | -0- | 652 | 652 |
| Plumbing and electrical | -0- | 1,050 | 1,050 |
| Depreciation | 3,915 | 2,841 | 6,756 |
| Total deductions | | | 26,889 |
| Losses | | | (7,289) |

### Passive Income and Loss

| | Total |
|---|---|
| Nonpassive loss from Sch. K-1, Shareholder's Share of Income, Credits, Deductions, etc. | (5,249) |
| Nonpassive income from Sch. K-1 | 1,962 |
| Total income or loss | (10,576) |

Sams, Inc. reported income and claimed deductions on its Form 1120S for its 1996 tax year as follows:

Income

| | |
|---|---|
| Gross receipts | $37,828 |

Deductions

| | |
|---|---|
| Repairs and maintenance | 2,257 |
| Interest | 20,010 |
| Advertising | 975 |
| Other deductions | [1]12,624 |
| | |
| Total income | [2]1,962 |

[1] The other claimed deductions are as follows: Accounting ($300), dues and subscriptions ($1,118), gifts ($333), insurance ($906), legal and professional ($644), outside services ($3,165), supplies ($1,472), telephone ($867), utilities ($3,539), and communications ($280).

[2] The income of $1,962 flowed through to petitioner individually as reflected on a Sch. K-1 issued to her by Sams, Inc.

Discussion

Generally, the burden of proof is on the taxpayer. Rule 142(a)(1). The burden of proof may shift to the Commissioner under section 7491 if the taxpayer establishes compliance with the requirements of section 7491(a)(2)(A) and (B) by substantiating items, maintaining required records, and fully cooperating with the Secretary's reasonable requests. Section 7491 is effective with respect to court proceedings arising in connection with examinations by the Commissioner commencing after July 22, 1998, the date of its enactment by section 3001(a) of the Internal Revenue Service Restructuring and Reform Act of

1998, Pub. L. 105-206, 112 Stat. 685, 726.

It is not clear from the record when respondent commenced the audit of petitioner's individual return; therefore, we cannot determine whether section 7491 is applicable. Nevertheless, petitioner has not established that she complied with its requirements. Respondent claims that petitioner showed only partial cooperation in the examination and Appeals processes and that she produced only minimal documentation after repeated requests. We agree. Accordingly, even if section 7491 were applicable, we conclude that the burden of proof remains upon petitioner.

1. <u>Allocation of Gross Receipts</u>

The notice of deficiency determined that gross receipts reported on the return for Sams, Inc. of $37,828 should have been reported on petitioner's individual return. Respondent disallowed deductions claimed on the return of Sams, Inc. of $35,866 but allowed Schedule A deductions of $2,577[3] and a Schedule C deduction of $20,010 on petitioner's individual return.[4] The net disallowance is $13,279 ($35,866 less ($2,577 plus $20,010)). Respondent reasons that the income and certain

---

[3] Respondent subsequently allowed an additional deduction for an advertising expense of $20.

[4] Respondent concedes that petitioner is entitled to these deductions if the Court concludes that respondent's allocation of income to petitioner is proper.

deductions should have been reported and claimed on petitioner's individual return because:  Petitioner sold real estate for and received commissions from O'Brien; all payments were made to petitioner in her name and were either deposited in her individual bank accounts or endorsed by her; and petitioner did not receive a salary from Sams, Inc. during the year at issue.

We consider whether the gross receipts were properly allocated by respondent and are taxable to petitioner under either the assignment of income doctrine and section 61 or under section 482, the regulations, and the case law thereunder.[5]

Gross income includes all income from whatever source derived.  Sec. 61(a).  Under the assignment of income doctrine and section 61, salaries, fees, and compensation are taxed to those who earned them.  United States v. Basye, 410 U.S. 441, 447 (1973); Leavell v. Commissioner, 104 T.C. 140, 149 (1995) (citing Lucas v. Earl, 281 U.S. 111, 114-115 (1930)).  The application of the assignment of income doctrine requires an analysis of who controlled the earning of income and who is the employer.

---

[5]  We note that respondent has not alleged that the gross receipts should be allocated under sec. 269A.  The application of sec. 269A to a personal service corporation (PSC) requires a finding that the principal purpose for forming or availing of that PSC is the avoidance or evasion of income tax by reducing income or securing the benefit of an expense, deduction, credit, exclusion, or other allowance for any employee-owner which would not otherwise be available.  Sec. 269A(a).  There are no facts in the record that would lead us to conclude that petitioner's principal purpose for incorporating Sams, Inc. was avoidance or evasion of income tax.  Therefore, sec. 269A is inapplicable.

Leavell v. Commissioner, supra at 149.  In determining whether the taxpayer was an employee of his personal service corporation as opposed to an employee of a professional sports club, the Court in Leavell considered whether the service recipient had the right to control the "manner and means" by which the services were performed.  Id.  The employee must be just that--an employee of the corporate employer.  Johnson v. Commissioner, 78 T.C. 882, 891 (1982), affd. without published opinion 734 F.2d 20 (9th Cir. 1984).  Also, there must be a "contract or similar indicium" between the corporation and the person recognizing the corporation's controlling position.  Id. at 891.

Petitioner has attempted to show that Sams, Inc. actually conducted business.  Moline Props., Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943).  For example, Sams, Inc. was incorporated in 1980.  The name of Sams, Inc. appears on the signature line of the agent-broker agreement with O'Brien.  Sams, Inc. was the payee on Forms 1099-MISC, Miscellaneous Income, issued by O'Brien.

These facts do not convince us that petitioner was an employee of Sams, Inc., and that we should respect her allocation of income to Sams, Inc.  Petitioner did not receive a salary from Sams, Inc.  Sams, Inc. had no source of income outside of the ventures in which petitioner personally participated.  Petitioner earned the income of Sams, Inc.  See United States v. Basye,

supra at 447. Petitioner did not have a contract for employment with Sams, Inc., which evidences lack of control by Sams, Inc. See Johnson v. Commissioner, supra at 891. Sams, Inc. had no employees in 1996. In addition, many of the checks deposited into the account (which is in petitioner's name) reflect petitioner individually as the payee, and not Sams, Inc. Furthermore, petitioner did not maintain records of the expenses claimed on her individual return separately from the expenses claimed on the return of Sams, Inc.

We conclude that petitioner was not an employee of Sams, Inc., and that petitioner, not Sams, Inc., earned the gross receipts at issue. We also conclude that petitioner was self-employed. Secs. 1401 and 1402. Therefore, the gross receipts reported on the return of Sams, Inc. are properly allocated to petitioner under the assignment of income doctrine.

Based on the above holding, we need not and do not apply section 482 to these facts.

2. Unreported Income and Bank Deposits

During the examination of petitioner's individual return, respondent's agent requested petitioner's books and records, including a sales journal, general ledger, and a general journal, none of which petitioner produced. Petitioner produced to respondent (and to the Court) bank statements reflecting deposits to and withdrawals from the account from January 1 through

December 3, 1996; however, she did not produce a bank statement from the account for the period December 4 through 31, 1996. Because petitioner did not produce all of the requested records, respondent reconstructed petitioner's income by performing a bank deposit analysis of her account. Respondent determined in the notice of deficiency that petitioner had unexplained deposits in the account and, therefore, unreported gross income of $35,318. Subsequent to the issuance of the notice of deficiency respondent reduced this amount to $25,578 calculated as follows:

| | |
|---|---|
| Total deposits into account | $99,381 |
| Returned checks | (3,375) |
| Deposits from home equity line of credit | (13,000) |
| Income reported on return | (57,428) |
| Total unexplained deposits | 25,578 |

In addition to the use of the bank deposit methodology, respondent determined that petitioner received $12,589.55 in commission income and $1,800 in teaching income from O'Brien, based upon Forms 1099-MISC issued to Sams, Inc. and filed with respondent. Petitioner reported the teaching income of $1,800 but only $10,122 of the commission income in 1996.

Petitioner asserts that the deposits into the account can be explained from the following sources:

| | |
|---|---|
| Returned checks | $3,375 |
| Home equity line of credit | 14,700 |
| 1099-MISC O'Brien commissions | 10,122 |
| 1099-MISC O'Brien teaching | 1,800 |
| Mack/Middleton interest | 22,140 |
| Mack/Middleton reimbursement | 3,881 |

| Partnership agreement | 7,500 |
| Property management rent | 14,950 |
| Rental income | [1] 19,500 |
| Miscellaneous | 1,413 |
| | |
| Total | 99,381 |

[1] Petitioner alleges that this amount includes a security deposit; however, she failed to indicate the amount of the security deposit. Petitioner reported the amount of rental income on her individual return as $19,600.

a. Forms 1099-MISC

Respondent determined that the full amounts reported on the Forms 1099-MISC were includable in petitioner's gross income in 1996. Petitioner challenged the accuracy of the information provided in the Form 1099-MISC concerning commission income of $12,589.55. Petitioner admits that she received and deposited $10,122.05 into the account in 1996 but alleges that the remaining $2,467.50 was deposited on January 2, 1997, and, therefore, was not includable in income for 1996.

Under section 6201(d), if a taxpayer in a court proceeding asserts a reasonable dispute with respect to income reported on an information return (e.g., Form 1099-MISC) and fully cooperates with the Secretary (including providing access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Secretary), then the Secretary shall have the burden of producing reasonable and probative information in addition to such information return. See Tanner v. Commissioner, 117 T.C. 237 (2001); McQuatters v. Commissioner, T.C. Memo. 1998-88; Dennis v. Commissioner, T.C.

Memo. 1997-275.

As discussed above, petitioner did not reasonably cooperate with respondent, and she did not produce all documents within her control (e.g., a bank statement from December 4 through 31, 1996). Accordingly, the burden of production as well as the burden of proof with respect to this issue remains on petitioner.

Petitioner has not provided credible evidence substantiating her position. For example, petitioner has not produced a bank statement for the period December 4 through 31, 1996. We conclude that the $12,589.55 reported on the Form 1099-MISC from O'Brien is includable in petitioner's gross income in 1996.

b. Bank Deposit Analysis

Generally, a taxpayer is required to maintain adequate books and records of income. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. The Commissioner is authorized to reconstruct a taxpayer's income by using any reasonable method that clearly reflects income, including an indirect method, when a taxpayer has failed to provide adequate records substantiating income. Sec. 446(b); Holland v. United States, 348 U.S. 121 (1954); Clayton v. Commissioner, 102 T.C. 632, 643 (1994). The Commissioner may use bank deposit records to reconstruct a taxpayer's income. Clayton v. Commissioner, supra at 645. Bank deposits are prima facie evidence of income, and the taxpayer has the burden of showing that the determination is incorrect. Id. The Commissioner must

take into account any nontaxable source or deductible expense of which the Commissioner has knowledge.  Id. at 645-646.

We agree that petitioner's records were inadequate to substantiate all of her income and deductions.  We note that the records petitioner produced to the Court are voluminous but disorganized.  Petitioner commingled the records of expenses claimed on her return with the records of expenses claimed on the return of Sams, Inc.  While we conclude generally that respondent's use of the bank deposit methodology was reasonable, we now consider whether each separate deposit into the account was gross income to petitioner because it appears that respondent has not taken into consideration whether each item is from a nontaxable source or a deductible expense.

Deposits made into the account in 1996 total $99,381.  Of the deposits, returned checks account for $3,375 of this amount. The returned checks are not includable in petitioner's gross income.

Deposits of $14,700, as reflected in deposit slips, are withdrawals from petitioner's home equity line of credit.  These withdrawals are loans and, therefore, are not includable in petitioner's gross income.

Petitioner provided credible evidence that the deposit of $3,881 is a reimbursement of engineering expenses.  Therefore, the reimbursement is not includable in petitioner's gross income.

Petitioner alleges that only fees of $1,455 from property management rents of $14,950 deposited into the account are includable in gross income because she was a collection agent for which she received a fee. Petitioner's bank statements indicate that deposits of $6,150 from the Skyview Farm tenant and $10,300 from the Stallman property tenant were made into the account. Canceled checks written on the account indicate that petitioner paid $5,542 to Skyview Farm and $9,453 to Bill Stallman. We conclude that petitioner retained $608 and $847, respectively, totaling $1,455 of fees received that are includable in petitioner's gross income.

Petitioner argues that only one-fourth of the deposit of $7,500 as shown on the partnership agreement is includable in gross income. Although the relevant partnership agreement indicates that petitioner had a one-fourth interest in the assets of the partnership capital and for purchases and sales, profits, losses, and distributions, petitioner did not present any credible evidence that she distributed any of $7,500 that she received pursuant to the partnership agreement to the other partners. We note that the record contains neither a return for this partnership nor a Schedule K-1 issued by this partnership to petitioner reflecting the distribution of income. We conclude that the entire deposit of $7,500 is includable in petitioner's gross income.

Petitioner alleges that the remaining $1,412.59 of miscellaneous deposits are not includable in gross income. Petitioner claims the deposits are from the following sources: Party expenses; Southern States store refund; Winnebago Industries stock dividends; repayment of gift from brother; cash ATM redeposit; Pagenet phone rebate; Catherine Douglas loan repayment; Farm Credit crop refund; and reimbursement for gift purchased by mother. Petitioner provided copies of checks received and deposited into the account that reflect these payments. We are satisfied that petitioner has provided credible evidence establishing that these deposits are from nontaxable sources and are not includable in petitioner's gross income.

3. Deductions

Petitioner claims that she is entitled to deductions for expenses for repairs, dues, gifts, insurance, legal and professional services, outside services, supplies, telephone and communications, and utilities of $13,279 that were claimed by Sams, Inc. and disallowed by respondent.

Under section 162(a), a taxpayer may deduct all ordinary and necessary expenses paid during the taxable year in carrying on any trade or business. Commissions and insurance expenses paid are deductible under section 1.162-1(a), Income Tax Regs. The cost of incidental repairs which neither materially add to the value of a property nor appreciably prolong its life are

deductible.  Sec. 1.162-4, Income Tax Regs.

No deduction is generally allowed for amounts paid or incurred for membership in any club organized for business, pleasure, recreation, or other social purpose.  Sec. 274(a)(3). Under section 274(a)(1), no deduction otherwise allowable shall be allowed for any item with respect to a facility used in connection with an activity which is of a type generally considered to constitute entertainment, amusement, or recreation unless the taxpayer establishes that the item was directly related to the active conduct of a trade or business or related to a substantial and bona fide business discussion.  Dues or fees paid to any social, athletic, or sporting club or organization shall be treated as an item with respect to facilities.  Sec. 274(a)(2)(A).  In the case of a club, the taxpayer must establish that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business.  Sec. 274(a)(2)(C).

No deduction shall be allowed for an item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity unless the taxpayer substantiates the deduction.  Sec. 274(d)(2).  The taxpayer must substantiate by adequate records or sufficient

evidence corroborating the taxpayer's own statement (A) the amount of the expense, (B) the time and place of the use of the facility, (C) the business purpose of the expense, and (D) the business relationship to the taxpayer of persons entertained or using the facility.  Sec. 274(d).  The taxpayer must establish that the expenditure was directly related to the active conduct of the taxpayer's trade or business.  Sec. 1.274-2(a)(1)(i), Income Tax Regs.  An expenditure for entertainment that is directly related to the active conduct of the taxpayer's trade or business is one that meets all of the following requirements: (1) At the time the expenditure was made the taxpayer had more than a general expectation of deriving some income or other specific trade or business benefit; (2) during the entertainment period, the taxpayer actively engaged in a business meeting, negotiation, discussion, or other bona fide business transaction, for the purpose of obtaining such income or other specific trade or business benefit; (3) in light of all the facts and circumstances, the principal character or aspect of the combined business and entertainment was the active conduct of the taxpayer's trade or business; and (4) the expenditure was allocable to the taxpayer and a person with whom the taxpayer engaged in the active conduct of a trade or business during the entertainment or establishes that he would have engaged in the active conduct of trade or business were it not for circumstances

beyond the taxpayer's control.  Sec. 1.274-2(c)(3), Income Tax Regs.

A taxpayer must satisfy the same substantiation requirements of section 274(d) for listed property as defined under section 280F(d)(4).  Listed property includes any cellular telephone (or similar telecommunications equipment).  Sec. 280F(d)(4)(A)(v).

Under section 274(b) deductions for gifts made by the taxpayer to an individual are not allowed to the extent that such expense, when added to prior expenses of the taxpayer for gifts made to such individual during the taxable year, exceeds $25. Sec. 1.274-3(a), Income Tax Regs.  The business gift must also be ordinary and necessary under section 162.

Because petitioner provided supporting canceled checks, invoices and bills, and other substantiating information, we are satisfied that petitioner has provided credible evidence and satisfied the requirements of section 162 and (if applicable) section 274(a)(1), (2)(A), and (d) concerning the time, place of use, business purpose of, and business relationship to clients, with respect to the following claimed expenses:

| Repairs | $2,257 |
| Dues | 1,118 |
| Insurance | 906 |
| Legal services | 644 |
| Services | 3,165 |
| Supplies | 1,214 |
| Telephone and communications (pager) | 1,147 |
| Utilities | 3,539 |

Accordingly, we conclude that petitioner is entitled to deduct these expenses.

Petitioner produced canceled checks and other information concerning her business gifts.  We are satisfied that petitioner has provided credible evidence and has satisfied the requirements of section 274(b) and section 1.274-3(a), Income Tax Regs., relating to the following business gift expenses:  $5 (Schultz); $50 (Burns and Henderson); $25 (Wells); $25 (Slater); $25 (Sullivan); $25 (Marsh); $16.28 (Berry); $72 (Rose, Wiley, and Hytton); and $50 (Dorsey and Gray), for a total of $293.28 that petitioner is entitled to deduct.

4.  Schedule E Loss

On Schedule E petitioner reported nonpassive income of $1,962 and claimed a nonpassive loss of $5,249, which respondent disallowed.  Petitioner indicated that both the loss and income flowed through from a partnership as reported on a Schedule K-1. The Schedule K-1 issued by Sams, Inc. reflects income of $1,962 but does not reflect the nonpassive loss of $5,249.  Petitioner has failed to substantiate the claimed nonpassive loss of $5,249.

Accordingly, respondent's determination on this issue is sustained.

5. Schedule E Expenses

Respondent disallowed deductions for a commission expense, insurance expenses, association dues, a utility expense, and $290 of the painting expense claimed on Schedule E of petitioner's individual return, for a total of $1,246 of disallowed deductions.

Petitioner produced copies of canceled checks, bills, and invoices to substantiate her claimed commission expense, association dues, and painting expense. We are satisfied that petitioner has provided credible evidence relating to the claimed commission expense of $288, the dues expense of $188, and the painting expense of $652, and she is entitled to deduct these. Petitioner has not provided any credible evidence substantiating the claimed insurance expenses of $471 or the claimed utility expense of $9. Accordingly, the claimed deductions for insurance expenses and utility expense are disallowed.

6. NOL Carryover

On her 1996 tax return petitioner claimed an NOL carryover of $56,699 from her 1991 tax year. Petitioner produced a copy of the first page of her individual 1991 Federal income tax return, which reflects a negative adjusted gross income of $25,803. Petitioner claims that the NOL from 1991 was not eliminated by

virtue of the Order and Decision entered in Sams v. Commissioner, docket No. 20161-98S. Petitioner alleges that she is entitled to claim the NOL because she never received a copy of the agreement between her counsel and respondent which formed the basis of the settlement in that case.

Respondent determined that petitioner is not entitled to the claimed NOL carryover of $56,699 because all NOL's available for petitioner to carryover were eliminated in a prior docketed case, Sams v. Commissioner, docket No. 20161-98S. The Court entered an Order and Decision in Sams v. Commissioner, docket No. 20161-98S, on February 11, 2000, and ordered and decided that petitioner had deficiencies in Federal income taxes, additions to tax, and penalties for the taxable years 1992, 1993, 1994, and 1995.

An individual taxpayer may generally deduct an NOL carryover for up to 20 years from the tax year of the loss. Sec. 172(b)(1)(A).

It is not clear from the record how or when the loss was sustained, how the NOL carryover was computed, or whether the NOL was computed properly under section 172. Petitioner's 1991 return does not reflect the NOL available to be carried forward; nevertheless, even if it properly reflected the NOL available to be carried over, submission of the return is not sufficient evidence of the claimed loss. Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979). We conclude that petitioner has not

substantiated the claimed NOL carryover, and the claimed NOL carryover is denied.

7.    Standard Business Mileage Deduction

At trial, petitioner claimed that she was entitled to deduct standard business mileage of $5,249.23. Although petitioner attached to her individual return a Form 4562, Depreciation and Amortization, reflecting 10,761 business miles driven by Vehicle 1 (a Cadillac) and 6,172 business miles driven by Vehicle 2 (a truck), for a total of 16,933 business miles driven, petitioner did not actually claim the deduction because she alleges that her accountant mistakenly failed to claim it. We consider this matter as an affirmative issue raised by petitioner.

Under section 274(d)(4), no deduction is allowed with respect to listed property as defined in section 280F(d)(4) unless the taxpayer adequately substantiates the expense, as discussed above. Listed property includes any passenger automobile and any other property used as a means of transportation. Sec. 280F(d)(4)(A)(i) and (ii). A taxpayer may deduct a mileage allowance for ordinary and necessary expenses of local travel and transportation while traveling away from home. Sec. 1.274(d)-1(a)(2)(iii), Income Tax Regs. The Commissioner is authorized to establish the standard mileage rate that is deemed to satisfy the substantiation requirements for purposes of section 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg.

46017 (Nov. 6, 1985). Sec. 1.274(d)-1(a), Income Tax Regs. The standard business mileage rate for transportation expenses paid or incurred on or after January 1, 1996, is 31 cents per mile for all miles of use for business purposes. Rev. Proc. 95-54, 1995-2 C.B. 450, 452.

Petitioner produced a copy of her daily appointment book that reflects approximately 17,300 business miles traveled in 1996 to substantiate her claim. We are satisfied that petitioner has provided credible evidence substantiating the number of business miles traveled, and petitioner is allowed a deduction of $5,249.23 (31 cents times 16,933).

8.  Section 6662 Accuracy-Related Penalty

The accuracy-related penalty is equal to 20 percent of any portion of an underpayment of tax required to be shown on the return that is attributable to, among other things, the taxpayer's negligence or disregard of rules or regulations or any substantial understatement of income tax. Sec. 6662(a) and (b). "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code and any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. "Disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). A taxpayer has a substantial understatement of income tax if the amount of the

understatement exceeds the greater of either 10 percent of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A).

The penalty provided for in section 6662 is not imposed on any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs. Reliance on the advice of a professional, such as an accountant, does not necessarily demonstrate reasonable cause and good faith unless the reliance was reasonable and the taxpayer acted in good faith. Sec. 1.6664-4(b)(1) and (c)(1), Income Tax Regs. In the case of claimed reliance on the accountant who prepared the taxpayer's tax return, the taxpayer must establish that correct information was provided to the accountant and that the item incorrectly omitted, claimed, or reported in the return was the result of the accountant's error. Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978).

Respondent determined that petitioner is liable for the accuracy-related penalty because of either negligence or disregard of the rules or regulations or substantial understatement of income tax. Petitioner asserts that she is not liable for the section 6662 penalty because she was not negligent, she did not disregard the statutes or regulations, she

properly reported all income and expenses, and she relied on the advice of a tax professional.

We conclude that petitioner did not act with reasonable cause or good faith.  We conclude that her reliance on the advice of a tax professional is not reasonable or in good faith. Accordingly, petitioner is liable for the accuracy-related penalty.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>